**Jeffrey L. PARKER, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 48A02–8901–CR–10.[1]**

Court of Appeals of Indiana, First District.

Feb. 18, 1991.

---

1. This case was reassigned to this office on January 2, 1991.

Samuel C. Hasler, Patrick Murphy, Anderson, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for plaintiff-appellee.

BAKER, Judge.

Defendant-appellant Jeffrey Parker appeals his conviction and sentence on one count of conspiracy to commit confinement, a Class B felony[2], and his convictions on two counts of criminal confinement, Class B felonies.[3]

---

2. IND.CODE 35–41–5–2; IND.CODE 35–42–3–3.     3. IND.CODE 35–42–3–3.

Parker raises several issues for our review, which we restate as:

I. Whether there was sufficient evidence to support the conspiracy conviction.

II. Whether the trial court erred in refusing to admit tendered evidence on Parker's defense of duress, and whether the trial court erred in refusing to give an instruction on duress.

III. Whether inconsistencies in the testimony of one of the State's witnesses warrant reversal.

IV. Whether the trial court erred in employing in-court security measures.

V. Whether the trial court displayed bias against Parker necessitating. a new trial.

VI. Whether the trial court erred in not arranging measures for witness security.

VII. Whether the trial court erred in its explanation of the crime of conspiracy to a member of the jury panel during *voir dire.*

VIII. Whether Parker's actions support two separate confinement convictions.

IX. Whether the trial court erred in ordering consecutive sentences.

We affirm.

### FACTS

On February 1, 1985, a riot occurred at the Indiana Reformatory at Pendleton. The incident broke out when a handful of inmates were involved in the stabbing of one of the guards. As events progressed, a group of inmates, led by John Cole, took Officer Gorsuch hostage at knifepoint and forced him to open one of the cellhouses. Once inside, Cole's group also took Officers Millstead and Ingalls and Counselor Weist hostage. Cole forced the hostages to open the switches controlling the doors to the prisoners' cells, releasing most of the prisoners in the cellhouse. Parker was one of the first released and joined Cole's group in forcing the hostages to open the many remaining switches.

4. IND.CODE 35-45-1-2.

5. IND.CODE 35-41-5-2; IND.CODE 35-45-1-2.

Officers Millstead, Ingalls, and Counselor Weist were confined to a cell and used as bargaining chips in Cole's negotiations with prison authorities. Parker, who by this time was armed with a knife, guarded the hostages. When Parker arrived at the cell where the hostages were being held, his knife appeared to be bloodstained, and he made statements "to the effect of we ... just stabbed officers outside and we're going to come in and get you [hostages], too." *Record* at 1249. At one point during the crisis, a rumor flashed through the cellhouse that the authorities were going to storm the cellhouse to regain control, and Parker responded by holding his knife to Officer Ingalls's throat. At another point, Parker slapped Officer Ingalls across the back of the head when Ingalls refused to tell authorities by radio that he was alive and unharmed.

Parker was charged with four counts of criminal confinement, one count of conspiracy to commit criminal confinement, one count of rioting,[4] and one count of conspiracy to riot.[5] The jury acquitted him on two of the confinement counts, and the rioting and conspiracy to riot counts. He was convicted on the three remaining counts.[6]

### DISCUSSION AND DECISION

#### I

Parker first argues the evidence to support his conspiracy conviction is insufficient. When reviewing a challenge to the sufficiency of the evidence to sustain a conviction, we neither reweigh the evidence nor judge the credibility of witnesses. *Hurt v. State* (1990), Ind.App., 553 N.E.2d 1243. We look only to the evidence most favorable to the verdict, and to all reasonable inferences flowing therefrom. *Id.*

IND.CODE 35-41-5-2 defines conspiracy:

(a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to

6. The convictions of Parker's confederates were affirmed by our supreme court in *Trotter v. State* (1990), Ind., 559 N.E.2d 585 and *Cole v. State* (1990), Ind., 559 N.E.2d 591.

commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony....

(b) The State must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement.

The essential elements the State must show to obtain a conviction for conspiracy are "[c]oncurrence of sentiment and cooperative conduct in the criminal enterprise." *Smith v. State* (1987), Ind., 516 N.E.2d 1055, 1062 (citation omitted), *cert. denied* (1988), 488 U.S. 934, 109 S.Ct. 330, 102 L.Ed.2d 347. The State need not show a formal express agreement to prove a conspiracy. *Phares v. State* (1987), Ind.App., 506 N.E.2d 65. Agreement may be inferred from circumstances alone, including the parties' overt acts in pursuance of a criminal act. *Mullins v. State* (1988), Ind., 523 N.E.2d 419.

■ Here, the evidence most favorable to the verdict reveals that Parker, from the time he was liberated from his cell, collaborated with Cole in forcing the hostages to release other inmates. He acquired a knife and acted at Cole's behest in guarding the hostages and requiring them to speak with authorities during negotiations.

■ This case was largely a battle of credibility between Parker and his witnesses on one side and the State's witnesses on the other. "Resolution of conflicts arising from the testimony offered at trial is exclusively within the province of the trier of fact.... [Parker's] briefs essentially enjoin us to ignore this longstanding principle and adopt [his] interpretation of the evidence adduced at trial. This we may not do." *Sutton v. State* (1986), Ind.App., 495 N.E.2d 253, 258 (citation omitted), *trans.*

*denied.*[7] The evidence of concerted action was sufficient for the jury to infer conspiracy.

## II

■ Parker's next arguments concern the defense of duress under IND.CODE 35–41–3–8. He argues the trial court erred in refusing to admit into evidence testimony that he acted under duress, and that the trial court erred in refusing to give an instruction on duress.

The simple answer to this argument is that Parker was not entitled to raise the defense of duress. The statute defining the duress defense specifically states the defense is not applicable to someone who "committed an offense against the person as defined in IC 35–42." IND.CODE 35–41–3–8(b)(2). Criminal confinement is a crime against the person, IND.CODE 35–42–3–3, and the defense of duress is therefore inapplicable.

The analysis holds true for the conspiracy to commit criminal confinement charge as well. While conspiracy is an offense of general applicability under IND.CODE 35–41, IND.CODE 35–41–5–2 does not alone define the offense of conspiracy to commit criminal confinement. As with crimes of attempt, the conspiracy statute must be read in conjunction with the statute defining the underlying felony to determine whether the crime is against the person. Because criminal confinement, as noted above, is a crime against the person, conspiracy to commit criminal confinement is likewise a crime against the person. *See Armand v. State* (1985), Ind., 474 N.E.2d 1002 (attempted robbery is a crime against the person to which the defense of duress

7. The invitation to reweigh the evidence is not the only failing of Parker's briefs.

We wish to remind Parker's counsel of the need for adherence to our rules of appellate procedure. After rebriefing ordered by this court, Parker's counsel submitted a 49 page brief which contains numerous grammatical errors and argument sections which are not clear or well written. *See* Ind. Appellate Rule 8.3(A)(7). Additionally, counsel has tried to circumvent the 50 page limitation on briefs contained in Ind. Appellate Rule 8.2(A)(4) by submitting an appendix containing lengthy arguments. Appendices are to contain excised portions of the record, photocopies of decisions upon which the party relies, and similar materials: they are not to contain argument. Finally, Ind. Appellate Rule 8.2(A)(2) requires that briefs be bound. The several copies of the amended brief are bound so poorly they are literally falling apart, making them difficult to read and use. Counsel would be well advised to re-read the rules of appellate procedure and purchase a working stapler before filing further appeals.

is inapplicable); *Kee v. State* (1982), Ind., 438 N.E.2d 993 (attempted murder is a crime against the person to which the defense of duress is inapplicable).

There was no error.

## III

■ Parker next argues inconsistencies in the testimony of one of the State's witnesses amount to perjury necessitating reversal. Two days after the riot, Officer Millstead gave a written statement of the events during the riot. He did not see the statement again until the day of trial, three and one-half years later, when the prosecutor gave him a copy of the earlier statement to refresh his memory. Officer Millstead had only a few moments to review the statement before he initially testified. He was later given another chance to review the statement and testified that the version of the events in the statement was more accurate than the version he gave in his initial testimony. He also testified that his initial testimony was not false, but was the best he could recollect without full reference to the statement. The only inconsistencies between his initial and his subsequent testimony concerned the time when he first saw Parker and the exact cell in which he was held hostage. The statement revealed Parker was one of the initial participants whom Millstead encountered, while Millstead's initial testimony was to the effect that he did not see Parker until he was locked into a cell.[8]

■ A conviction obtained by the knowing use of perjured testimony will not be upheld on review. *Evans v. State* (1986), Ind., 489 N.E.2d 942. Inconsistency alone, however, does not constitute perjury. *Id.* Here, there is no allegation of perjury beyond the inconsistency itself, and there is no showing whatsoever the State knowingly used perjured testimony. On the contrary, the record merely reveals the testimony of a witness who needed to refresh his memory.

■ Moreover, to set the conviction aside, there must be "a reasonable likelihood that the judgment of the jury could have been affected by testimony known to be false." *St. John v. State* (1988), Ind., 523 N.E.2d 1353, 1357. Here, the more accurate testimony, the statement, is inculpatory. The less accurate testimony, the initial testimony, is exculpatory. Accordingly, any effect on the jury of the "false" testimony could only have inured to Parker's benefit.

Having failed first to show perjury, and second to show prejudice from the admittedly inconsistent testimony, Parker's argument must fail. There was no perjury to warrant a reversal.

## IV

Parker next argues the trial court denied him a fair trial by requiring inmate witnesses to remain shackled during their testimony and by allowing sheriff's deputies and prison guards to remain in the court room during the prisoners' testimony.

■ Trial courts are vested with inherent authority to control their own proceedings. *Games v. State* (1989), Ind., 535 N.E.2d 530, *cert. denied* (1989), —— U.S. ——, 110 S.Ct. 205, 107 L.Ed.2d 158, *reh'g. denied*, —— U.S. ——, 110 S.Ct. 523, 107 L.Ed.2d 523. We will reverse a decision of the trial court regarding the conduct of proceedings only for an abuse of discretion. *Marbley v. State* (1984), Ind., 461 N.E.2d 1102. At the same time, defendants have a right to appear in court, and to have their witnesses appear in court, free from restraint unless the trial court, in the exercise of its discretion, determines restraint is necessary to prevent violence or escape. *Jessup v. State* (1971), 256 Ind. 409, 269 N.E.2d 374. *See also Payne v. Commonwealth* (1987), 233 Va. 460, 357 S.E.2d 500,

---

**8.** The State's brief erroneously states that the contents of the initial testimony and the statement are the reverse of what we have stated them to be. *Appellee's Brief* at 13–14. We have reviewed the record at pages 1384–1404 thoroughly, however, and we agree with the State's conclusion, albeit inconsistent with the State's recitation of the facts, that Parker objects to the statement because it is more inculpatory than Millstead's initial testimony. *Appellee's Brief* at 16.

*cert. denied* (1987), 484 U.S. 933, 108 S.Ct. 308, 98 L.Ed.2d 267, *reh'g. denied* (1988), 484 U.S. 1021, 108 S.Ct. 738, 98 L.Ed.2d 685. In exercising its discretion "within the bounds of the right of defendants to a fair trial ... the court ... is responsible for the security of the courtroom, and it decides, first, whether any special security is needed, and second, on the most appropriate security safeguards under the particular circumstances." *United States v. Whitehorn* (D.D.C.1989), 710 F.Supp. 803, 839, *rev'd. on other grounds sub nom. United States v. Rosenberg* (D.C.Cir., 1989), 888 F.2d 1406, *reh'g. denied* (D.C. Cir.1990), 894 F.2d 1395.

■ In the present case, the trial court was confronted with a sizeable group of witnesses and defendants who were convicted felons. In such a situation, prudence will often counsel heightened security measures, and we will not second guess the trial court's judgment. There must be an affirmative showing of prejudice to warrant a reversal. Parker has failed to demonstrate any prejudice from the security measures employed here.

All of the crimes with which Parker was charged stemmed from activities undertaken in a prison. The nature of the evidence presented was such that the jury learned that Parker and his witnesses were inmates at the Indiana Reformatory in Pendleton. Convicts are subject to restraint, and we cannot see how the jury could have been biased by seeing people whom they knew to be inmates from a penal institution in a shackled condition. *See Jessup, supra; Payne, supra; People v. Robinson* (1981), 92 Ill.App.3d 972, 48 Ill.Dec. 520, 416 N.E.2d 793; *Commonwealth v. Brown,* (1973), 364 Mass. 471, 305 N.E.2d 830; *McVey v. State* (1975), Okl.Crim.App., 541 P.2d 273.

In addition, the trial court took reasonable measures to prevent the jurors from viewing the defense witnesses while shackled. The witnesses, who were handcuffed, were sworn in and seated in the witness box outside the presence of the jury. *Record* at 2043, 2221–22. The trial court also ordered the prosecutor, outside the presence of the jury, not to attempt to give the witnesses any exhibits because the witnesses would have to reveal their handcuffs to the jury to handle the exhibits, *Record* at 2034, and the prosecutor complied. These were sufficient precautions to prevent any prejudice to Parker which could stem from the jury seeing the shackled witnesses. *Harrell v. Israel* (7th Cir., 1982), 672 F.2d 632, 637. *See also Annotation,* "Right of Accused to Have his Witnesses Free from Handcuffs, Manacles, Shackles, or the Like," 75 A.L.R.2d 762 (1961). There was no error in the shackling of defense witnesses.

■ As for the presence of sheriff's deputies and Department of Corrections personnel in the courtroom during trial, Parker has also failed to demonstrate error. In *Williams v. State* (1976), 264 Ind. 664, 348 N.E.2d 623 *appeal after remand* (1978), 268 Ind. 365, 375 N.E.2d 226, our supreme court stated "the judge should make a record of the arguments and his reason for permitting guards beyond those customarily employed." 264 Ind. at 676, 348 N.E.2d at 631. The reason to create a record is to permit appellate review. *Id.* Here, Parker has failed to demonstrate the trial court violated the rule in *Williams.*

First, Parker has not even revealed to us exactly how many guards were present at the trial. Second, there is no showing the number of guards present was greater than usual, or more specifically, greater than usual in a trial with multiple inmate defendants and inmate witnesses. *See Timmons v. State* (1986), Ind., 500 N.E.2d 1212 *appeal after remand* (1988) Ind., 543 N.E.2d 642. Moreover, even assuming *arguendo* the number of guards was greater than usual, we can see no abuse of discretion in this case in allowing the guards to remain. *See Whitehead v. State* (1987), Ind., 511 N.E.2d 284, *cert. denied* (1988) 484 U.S. 1031, 108 S.Ct. 761, 98 L.Ed.2d 773 (individuals allowed in court is a matter entrusted to trial court's discretion).

**V**

■ Parker next contends the trial court made several sarcastic comments to

Parker's trial counsel, thereby prejudicing Parker. It is of course the law that a trial judge should be an impartial person whose conduct and remarks do not give the jury an impression of partiality. *Marbley, supra.* Not all untoward remarks by a judge, however, constitute reversible error. *Gaynor v. State* (1966), 247 Ind. 470, 217 N.E.2d 156. The remarks must harm the complaining party or interfere with the right to a fair trial. *Id.*

All the remarks of which Parker complains were made outside the presence of the jury. Accordingly, while we agree with Parker that the judge's rejoinders to counsel's prefatory language of "may it please the court" were probably unnecessary, we can see no reversible error. The jury did not hear the remarks, and therefore could not have been prejudiced by them in reaching its verdict.[9]

### VI

Parker next argues one of his witnesses was intimidated by State agents. He contends the witness would have given exculpatory testimony if not intimidated, and that the trial court's failure to arrange security for that witness led directly to the witness's refusal to testify.

At a hearing outside the presence of the jury, the witness, an inmate at the Indiana State Prison in Michigan City, stated he had been intimidated and refused to testify unless the trial court guaranteed his protection during his return trip to Michigan City. The court offered to issue an order to the Sheriff, who was responsible for transporting the witness, to ensure the witness's safe transport. *Record* at 2234. The witness never responded to the court's offer, but Parker's trial counsel declined on the witness's behalf and informed the court she would not call the witness to testify before the jury because the court's offer was inadequate. *Record* at 2234–36. At

no time did Parker or his trial counsel request the court to take any action; no one other than the witness requested assistance.

Parker cannot now be heard to complain. He never requested any relief. Without a request for action, a trial court's failure to act is not error. *Carroll v. State* (1982), Ind., 438 N.E.2d 745. Moreover, the trial court offered to take reasonable action despite Parker's failure to request such action. Parker declined the court's offer. The court could do no more. Trial judges are not parties to a case; it was Parker's decision, not the court's, to remove the witness from the witness list. *Henderson v. State* (1979), 271 Ind. 633, 395 N.E.2d 224. "A trial judge is not required to take an active part in the trial of the cause to assist or to override counsel in the strategies employed in examining witnesses, objecting or failing to object and in generally managing and directing the lawsuit." *Id.* 271 Ind. at 636, 395 N.E.2d at 227. Finally, if there was error, Parker invited it by dismissing the witness and by failing to ask for relief. It does not lie with a party who invites error to complain of that error on appeal. *Reffett v. State* (1990), Ind.App., 557 N.E.2d 1068.

### VII

Parker contends the trial court subjected him to grave peril by giving an incorrect example of the crime of conspiracy using an analogy containing less than all the elements of conspiracy during *voir dire* examination of one of the veniremen, Mr. Diruzza. This argument fails for three reasons.

First, Parker did not object to the use of the analogy. Without a specific objection to the trial court, no error is preserved for appeal. *Von Almen v. State* (1986), Ind., 496 N.E.2d 55. Second, Parker

---

9. Parker also argues he was the victim of prosecutorial and judicial misconduct. He alleges the prosecutor suborned perjury in regard to Officer Millstead's inconsistent testimony. As we discussed in Section III above, however, there was no perjury and therefore no subornation of perjury.

The judicial misconduct Parker alleges is the trial court's restraint of the inmate witnesses without motion for such restraint from the State. This is an interesting argument, to say the least, since it is beyond contention that the court, not the parties, controls the proceedings. *Games, supra.*

cannot take advantage of his co-defendant's objection to the analogy; he had to make a personal objection to preserve any error. *Leavell v. State* (1983), Ind., 455 N.E.2d 1110. Third, Parker's counsel questioned the venireman after the trial court gave its analogy, and the record reveals her satisfaction with the venireman's understanding of the elements of conspiracy. *Record* at 945–50. If there was error, and we are not prepared to say there was, Parker himself cured it.

### VIII

 Parker argues that his acts will not support two confinement convictions. This argument is without merit. Three prison employees were confined in a cell during the riot, and the jury found Parker participated in the confinement of two of those three persons. This was a personal crime against each of the persons confined, and the trial court properly entered judgment and sentenced Parker for the two convictions. *Randall v. State* (1983), Ind., 455 N.E.2d 916, 932.

### IX

The trial court sentenced Parker to the presumptive 10 year term on each of the confinement counts and ordered the sentences be served concurrently. The court also sentenced Parker to the presumptive 10 year term on the conspiracy to commit confinement count and ordered the sentence to be served consecutive to the two confinement sentences.[10]

Parker's argument concerning the trial court's sentencing is twofold. First, he argues the trial court erred in not considering duress as a mitigating factor in sentencing. As we discussed in Section *II* above, however, there was no evidence of duress properly before the trial court, and there was no error in not considering duress as a mitigating factor.

Second, Parker argues his sentence is manifestly unreasonable because the trial court ordered a consecutive sentence for the conspiracy conviction. Trial courts have a great deal of discretion in determining whether to order sentences served consecutively. *McNeely v. State* (1988), Ind.App., 529 N.E.2d 1317; IND. CODE 35–50–1–2. We will reverse a sentence authorized by law as manifestly unreasonable only when no reasonable person could consider the sentence appropriate to the particular offense and the particular offender. *Lake v. State* (1991), Ind., 565 N.E.2d 332.

IND.CODE 35–38–1–7 [11] provides trial courts with a non-exclusive list of aggravating factors which may be considered in determining whether to enhance a sentence or order sentences served consecutively. These include the defendant's criminal history, the defendant's need for rehabilitative treatment that can best be provided in a penal facility, and the court's determination that imposition of a lesser sentence would depreciate the seriousness of the crime. The trial court found all of these factors present in Parker's case, and the record supports this finding. There was no error.

The trial court is in all things affirmed.

HOFFMAN, P.J., and BUCHANAN, J., concur.

---

**10.** IND.CODE 35–50–2–5 provides the 10 year presumptive sentence for Class B felonies.

**11.** Repealed by Public Law 1–1990, § 344, now IND.CODE 35–38–1–7.1.