Tonyia Dee **WILLIAMS**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 71A03–9109–Cr–268.

Court of Appeals of Indiana,
Third District.

Oct. 15, 1992.

Stephen G. Drendall, South Bend, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for appellee-plaintiff.

GARRARD, Judge.

Tonyia Dee Williams was convicted of Arson, a class B felony. We affirm.

## FACTS AND PROCEDURAL HISTORY

On December 31, 1990, Carol Hines hosted a New Year's Eve gathering at the home of her sister, Annette Hines. Annette was in Chicago at the time and Carol was left in charge of the house and Annette's three children.

During the course of the evening the guests were playing cards and drinking. Shortly before midnight, Tonyia Dee Williams arrived at the house and asked about some money that Annette had been holding for her and requested use of the telephone. Williams went upstairs to use the telephone, but found that Annette's teenage son, Lamont, was already on the phone with his girlfriend. After arguing over use of the phone, Williams was allowed to use it.

At the stroke of midnight, the partygoers began to celebrate by shaking up beer containers and pouring beer onto one another. Lamont joined in the revelry by pouring a beer onto the head of Williams. Williams, taking heated exception to being doused with beer, pulled the phone cord out of the wall and chased Lamont down the stairs and into the basement. Lamont locked himself in one of the rooms in the basement while Williams proceeded to pound on the door with the telephone. Carol, after observing Williams and Lamont run past her and into the basement, went downstairs and asked Williams to leave. Williams, however, refused to leave. Carol and Lamont then went upstairs, leaving Williams alone in the basement. Shortly after this, Chaka Jennings, Carol's daughter, overheard Williams say through a furnace vent: "I hope all you mother fuckers burn up."

Soon after these events Carol went back to check on Williams and when she opened the basement door, a ball of smoke met her at the door. The house was then evacuated and one of the guests, William Sanders, put out the fire by throwing dirty laundry onto the flames to smother it. The only physical damage caused by the fire, besides the burned clothes, was smoke throughout the house and soot and smoke damage to one of the walls in the basement.

Williams had meanwhile left the house through a side door and was five houses down the street before Carol could catch up with her. When Carol caught up with her the two argued again and Carol accused Williams of starting the fire. Carol Hines

and the children were unable to stay in the house that night because of all the smoke.

On April 25, 1991, a jury found Tonyia Dee Williams guilty of Arson, a class B felony. Williams appeals her conviction and we affirm.

ISSUES:

Williams presents three issues for appeal which we restate as follows:

I. Whether soot and smoke damage constitute "damages" within the meaning of IC 35–43–1–1(a).

II. Whether the trial court erred in prohibiting defense counsel from inquiring into a previous unrelated fire at the house.

III. Whether the trial court erred in denying the defendant's motion for a mistrial.

DISCUSSION:

Issue I:

■ First, Williams contends that the soot and smoke damage to the wall of the basement do not constitute "damages" within the meaning of IC 35–43–1–1(a). We disagree.

IC 35–43–1–1(a) reads: "A person who, by means of fire or explosive, knowingly or intentionally damages: (1) a dwelling of another person without his consent ..." Ind.Code Ann. § 35–43–1–1(a) (West 1986). The word "damages" is not further defined by the statute.

It is Williams' contention that this offense requires proof of burning or charring as was the case at common law. Traditionally the common law rigidly required an actual burning. The fire must have been actually communicated to the object to such an extent as to have taken effect upon it. *Lynch v. State* (1977), 175 Ind.App. 111, 370 N.E.2d 401, 403. In general, any charring of the wood of a building, so that the fiber of the wood was destroyed, was enough to constitute a sufficient burning to complete the crime of arson. Annotation, *What Constitutes "Burning" to Justify Charge of Arson*, 28 A.L.R.4th 488 (1984). However, merely singeing, smoking, scorching, or discoloring by heat were not

considered enough to support a conviction. *Id.* at 489.

The State contends that the word "damages" in our present statute is not tied to the common law definition of the word "burning" and should therefore be construed in its plain and ordinary sense. Any damage, even smoke damage, would therefore be enough to satisfy the requirements of the statute. We agree with the State.

■ First, in construing statutes, words and phrases must be given their plain, ordinary, and usual meaning, unless a contrary purpose is clearly shown by the statute itself. *Marion County Sheriff's Merit Bd. v. Peoples Broadcasting Corp.* (1989), Ind., 547 N.E.2d 235, 237. In this case, there is no indication from the statute that any special meaning is to be given to the word "damages." Webster's Third New International Dictionary (1976), defines damage to mean: "loss due to injury: injury or harm to person, property, or reputation: hurt, harm." In this case, there is clearly some harm done to the basement wall by smoke damage and soot.

Secondly, other states with similar statutes have held that smoke damage is enough to meet a requirement of "damage" in their statutes. For example, Georgia's first degree arson statute reads: "A person commits the offense of arson in the first degree when, by means of fire or explosive, he knowingly damages ... (1) Any dwelling house of another without his consent ..." Ga.Code Ann. § 16–7–60(a) (1992). The Court of Appeals of Georgia, interpreting this statute, stated:

"It was shown at the trial that the only damage to the building was heavy smoke damage which required special machinery to remove it from the building. The jail itself was not charred or burned.... The verb "damages" is an ordinary word and when it is used in a statute it must be given its ordinary signification. [cite omitted] Webster defines 'damage' as 'To hurt; impair.' Thus, causing smoke damage to the jail building falls within this definition and constitutes arson in the first degree if the other elements of the crime are present."

*Smith v. State* (1976), 140 Ga.App. 200, 230 S.E.2d 350, 350.

New York is similar. New York's fourth degree arson statute reads: "1. A person is guilty of arson in the fourth degree when he recklessly damages a building or motor vehicle by intentionally starting a fire or causing an explosion." N.Y.Penal Law § 150.05 (McKinney 1992). The appellate division, in *People v. Fleming* (1990), 164 A.D.2d 942, 560 N.Y.S.2d 50, 51, interpreted this statute:

> "The fire caused smoke damage to the ceiling and walls [and] heat damage to a light fixture in the ceiling.... The defendant contends on appeal that there was no 'damage' to the building so as to support the arson conviction [under] Penal Law § 150.05(1).... It is not necessary that a building 'burn' in order for there to be arson in the fourth degree. The slightest damage to a building caused by fire which is intentionally set is sufficient to establish the damage element of this crime [cite omitted] and the smoke and heat damage did so here."

We find the authorities cited above persuasive and therefore find that the smoke damage and the soot on the basement wall were enough to support a conviction for arson under IC 35–43–1–1(a).

Issue II:

■ Williams contends that the trial court erred in prohibiting defense counsel from inquiring into a previous unrelated fire at the house. We disagree.

During cross-examination of the State's witness, Annette Hines, the following occurred:

> "Q  Now, she [Williams] wasn't in your house earlier in 1990 when you had a house fire then, was she?
> A  No, she wasn't.
> Q  How was that fire started?
> THE STATE: Objection, Your Honor, it's irrelevant.
> THE COURT: Whoa, both attorneys come up here.
> (SIDE BAR CONFERENCE)" (R. 355–56).

■ Evidence is relevant when it throws or tends to throw light on the guilt or innocence of an accused even though its tendency to do so may be slight. *Luginbuhl v. State* (1987), Ind.App., 507 N.E.2d 620, 624, *trans. denied.* It is well settled, however, that rulings on the relevancy of evidence are entrusted to the broad discretion of the trial judge. *Denton v. State* (1986), Ind., 496 N.E.2d 576, 579; *Luginbuhl, supra* at 624.

■ A defendant may, of course, establish his innocence by showing that some other person or persons committed the crime charged, instead of himself. *Bland v. State* (1984), Ind., 468 N.E.2d 1032, 1035–36. But the mere possibility that some third person did the act is not enough. Evidence tending to incriminate another must be competent and confined to substantive facts which create more that a mere suspicion that such other person committed the particular offense in question. *Id.* at 1036.

In the case at bar, the testimony that the defendant desired to introduce would have tended to show that the children of Annette Hines had set a previous fire in the house. Specifically, the defendant's offer of proof showed that the defense had a witness that had heard a statement from Annette Hines that her children had set a fire that occurred in the house six months prior to the New Year's Eve fire. This evidence would have been, at most, hearsay evidence designed to cast a mere suspicion over Williams' involvement in the fire. The trial court did not err in excluding this testimony.

Issue III:

■ Finally, Williams contends that the trial court erred in denying the defendant's motion for a mistrial. We disagree.

The trial court in this case admonished defense counsel in front of the jury. The full exchange reads as follows:

> "Q  Now, she [Williams] wasn't in your house earlier in 1990 when you had a house fire then, was she?
> A  No, she wasn't.
> Q  How was that fire started?

THE STATE: Objection, Your Honor, it's irrelevant.

THE COURT: Whoa, both attorneys come up here.

(SIDE BAR CONFERENCE)

THE COURT: Exactly what do you think you're doing? Now, if the State did that, that would be a mistrial.

MR. DRENDALL: This isn't about the Defendant. This is not prejudicial to anyone.

THE COURT: You're out of order. You go sit down and don't get into that again.

(END OF SIDE BAR CONFERENCE)

THE COURT: Ladies and gentlemen of the jury, disregard that. That is totally inappropriate. It has nothing to do with this case, and it was wrong to bring it into this case.

MR. DRENDALL: We object to the Court's admonition.

THE COURT: Well, Mr. Drendall, you are a practicing attorney, and you know the rules, and if you wanted to bring that up in front of this jury, you knew perfectly well you were to do that outside the presence of this jury—

MR. DRENDALL: I have nothing else.

THE COURT: —and get a ruling, and that was wrong to do. And jury disregard it and ignore it. Anybody have a problem with that? We're not trying this lady for other crimes. We're not trying this lady for anything. We're concerned about the 31st of December and the 1st of January and that's all.

MR. DRENDALL: I don't have anymore questions of this witness." (R. 355–57).

The next morning, defense counsel moved for a mistrial outside the presence of the jury. The trial court denied the motion.

■■■ In general, whether to grant a mistrial is within the trial court's discretion and on review, great deference is accorded to the trial judge as he is in the best position to gauge the surrounding circumstances of an event and its impact on a jury. *Tapia v. State* (1991), Ind., 569 N.E.2d 655, 658. Granting a mistrial is an extreme remedy and is warranted only when the defendant is placed in a position of grave peril to which he should not have been subjected. *Kelly v. State* (1990), Ind., 561 N.E.2d 771, 772.

■■■ On the other hand, a trial judge should be an impartial person whose conduct and remarks do not give the jury an impression of partiality. *Parker v. State* (1991), Ind.App., 567 N.E.2d 105, 112, *trans. denied.* Not all untoward remarks by a judge, however, constitute reversible error. *Id.* The remarks must harm the complaining party or interfere with the right to a fair trial. *Id.* In addition, the trial judge has a responsibility to preside over the trial and control the proceedings by taking responsible steps to insure proper order and discipline. *Cardwell v. State* (1987), Ind.App., 516 N.E.2d 1083, 1085, *trans. denied.* Implicit in the judge's duty to control the proceedings is the power to give reasonable admonitions to the witnesses and counsel. *Id.*

In this case, we find nothing in the brief exchange between the court and Mr. Drendall that placed Williams in grave peril or prejudiced her right to a fair trial. It was within the trial judge's discretion to exclude the testimony in this instance and admonish the jury to disregard the question asked by the defendant. While we are sure that the trial judge could have accomplished his purposes in a more genteel fashion, we cannot say that his remarks rose to the level of reversible error.

CONCLUSION:

For the foregoing reasons the judgment of the trial court is affirmed.

HOFFMAN and ROBERTSON, JJ., concur.