



FILED

Jan 29 2025, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Aron Phillip Smith,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

January 29, 2025

Court of Appeals Case No.
24A-CR-548

Appeal from the Madison Circuit Court

The Honorable Mark Dudley, Judge

Trial Court Cause No.
48C06-2302-F6-000606
48C06-2305-F4-001398

**DeBoer, Judge.**

## Case Summary

[1] Approximately one month before his trial, Aron Smith asked the trial court to dismiss his court-appointed counsel ("Trial Counsel") and be appointed new counsel. During a hearing on Smith's request, the trial court determined the circumstances did not warrant removing Trial Counsel from the case. When Smith suggested proceeding pro se, the trial court engaged Smith in an extensive dialogue about the dangers and disadvantages of pro se representation and gave him numerous opportunities to continue with Trial Counsel as his attorney. Smith refused and the trial court granted Smith's request to proceed pro se. A jury found Smith guilty on all charges.

[2] On appeal, Smith raises three issues, which we restate as whether the trial court's denial of Smith's request for new court-appointed counsel violated his right to counsel under the Sixth Amendment to the United States Constitution or Article 1, Section 13 of the Indiana Constitution. Smith also claims the trial court abused its discretion by failing to consider less drastic options than forcing Smith to forgo counsel. We affirm as we find that Smith's rights were not violated under the Sixth Amendment or Article 1, Section 13 of the Indiana

Constitution, and that the trial court did not abuse its discretion by not appointing Smith another attorney or calling Trial Counsel to testify.

## Facts and Procedural History

[3] On February 16, 2023, the police were called after David Burch's neighbors observed suspicious activity at his Elwood, Indiana house, and noticed that Burch's Mercedes SUV was missing. Police later located Smith driving Burch's missing SUV. Smith led law enforcement officers on multiple high-speed chases before the SUV experienced mechanical problems, and Smith was apprehended. Burch's belongings were discovered in the SUV and comparative DNA testing yielded "very strong support" that Smith was the single individual whose DNA had been found on a cigarette butt recovered in Burch's home. *Tr. Vol. 3* at 76-77.

[4] On February 21, 2023, under cause number 48C06-2302-F6-606 ("F6-606"), the State charged Smith with two Counts of Level 6 felony Resisting Law Enforcement[1] and one Count of Class B misdemeanor Failure to Remain at the Scene of an Accident.[2] In April 2023, Smith's first court-appointed counsel withdrew due to a conflict and the trial court appointed a second attorney to represent Smith. On May 10, 2023, the State charged Smith with Level 4

---

[1] Ind. Code. §§ 35-44.1-3-1(a)(3), -(c)(1)(A).

[2] I.C. §§ 9-26-1-1.1(a)(2), -(b). While fleeing law enforcement, Smith sideswiped another vehicle and did not stop the stolen SUV or remain at the scene of the collision.

felony Burglary,[3] Level 6 felony Auto Theft,[4] and Class A misdemeanor Theft[5] under cause number 48C06-2305-F4-1398 ("F4-1398") for Smith's criminal conduct connected to Burch's home and vehicle. The trial court appointed Smith's attorney in F6-606 to also represent him in F4-1398.

[5] On August 18, 2023, Smith asked the trial court to dismiss his second attorney in both causes, alleging his attorney had not been responsive to his requests pertaining to discovery or to Smith's desire to file various motions. Smith also claimed counsel's upcoming resignation from the public defender's office rendered him "not fully committed" to Smith's cases. *Appellant's App. Vol. 2* at 100. The trial court addressed Smith's request on the day it was filed and acknowledged the second attorney's upcoming resignation, removed the second public defender from Smith's case, and appointed a third attorney, Trial Counsel, to represent Smith.

[6] At a September 29, 2023 hearing, Smith requested a speedy trial in F4-1398 and the parties agreed to a December 4, 2023 trial date. On October 3, 2023, the State filed a motion to join offenses[6] in F6-606 and F4-1398, which was granted

---

[3] I C. § 35-43-2-1(1).

[4] I.C. §§ 35-43-4-2(a), -(a)(1)(B)(i).

[5] I.C. § 35-43-4-2(a).

[6] The motion alleged the charged offenses were "based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." *Appellant's App. Vol. 2* at 106-07; *see also* I.C. § 35-34-1-9(a)(2).

by the trial court. In late November 2023, the State amended the F4-1398 information to add a habitual offender enhancement.

[7] On December 4, 2023, the trial court granted the State's motion to continue the jury trial in F4-1398 and reset both causes for trial on January 2, 2024. The next day, Smith tendered a pro se letter asking to dismiss Trial Counsel and be appointed new counsel. He claimed Trial Counsel lied to him multiple times, became "argumentative an[d] refuse[d]" to file several motions on his behalf, did not consult him about objecting to the joinder of the causes, and failed to abide by his discovery-related requests. *Id.* at 137-38. Smith also alleged Trial Counsel told a jail officer Smith "would not be doing to[o] good" after his trial, which Smith interpreted as "meaning Id [sic] [b]e found guilty" and that Trial Counsel "Believe's Im [sic] guilty." *Id.* at 138.

[8] The trial court held a hearing on Smith's letter on December 8, 2023. After being placed under oath, the trial court gave Smith the opportunity to "expand on" the content of the letter. *Tr. Vol.* 1 at 52. Instead, Smith responded, "[j]ust what I put in my letter." *Id.* After Trial Counsel advised the trial court that he did not agree with the allegations in Smith's letter, the trial court asked Trial Counsel whether he believed a significant breakdown in the attorney-client relationship had occurred, to which Trial Counsel responded:

> TRIAL COUNSEL: Judge, we've had some disagreements about different strategy issues. [] Up until the point in time where he wrote the letter, . . . I was getting ready [for] a trial we were

supposed to start on Monday. But . . . [i]f he feels . . . there is that breakdown, []certainly there has been disagreements, then I'm not going to dispute that that's what he thinks, and there has been a breakdown.

*Id.* at 53. After the trial court stated that removing Trial Counsel might jeopardize the January 2, 2024 trial date, Smith asked whether a delay would occur "even if I go pro-se, represent myself?" *Id.* The trial court noted Smith's letter had not asked for self-representation, and Smith replied, "that would be my next question." *Id.*

[9] After consideration, the trial court denied Smith's request to change counsel, reasoning:

> COURT: It's late in the game as it relates to the case that's set for January. There's been no indication, up until now, that there's any issues. And [Trial Counsel's] right, we were supposed to start a trial this week. And so I discount some of what you put in your letter. I'm not saying that there wasn't some disagreement, but that's inherent in every attorney/client relationship. I was a lawyer for twenty-five (25) years. There's always disagreements. That doesn't tell me that there's a breakdown in communication, a breakdown in the ability to have a lawyer represent you to their fullest skill and professional expertise. And so it's a judgment call on mine, Mr. Smith, and so I'm utilizing that discretion and denying your request to change counsel.

*Id.* at 54.

[10] The trial court then questioned Smith with respect to his ability to adequately represent himself. When asked why he wanted to represent himself, Smith

responded, "because I have a better chance of getting what I need to say out there, . . . I feel like at this point [Trial Counsel] believes I'm guilty, in his mind, and once that was established there's . . . no help he can provide for me." *Id.* at 56. The trial court asked Smith about his literacy level, education level, and history of mental illness. Smith reported he was not an attorney but did "have a tablet with the law library on it." *Id.* at 57. He stated he understood the nature of the charges against him, including the potential habitual offender status enhancement. The trial court informed Smith that an attorney would have more experience and skill than a non-lawyer and that Smith would be held to the same procedural and evidentiary standards as a trained attorney. Smith was again warned of the dangers of self-representation, and he acknowledged that he understood those warnings.

[11] During this discussion, the trial court asked Smith why he thought representing himself was the better option. The following exchange occurred:

> SMITH: Okay. . . . I got a call from [Trial Counsel], and it was on speaker phone, and . . . the officer . . . answered the phone and, [] [Trial Counsel] asked how I was doing. [The officer] said well his eye's getting better, he still can't see and all that. And [Trial Counsel] stated to [the officer] that . . . Mr. Smith will not be doing to[o] good after his trial come Monday. And you can call [the officer] right now and confirm that.

> COURT: Well that just sounds like a personality conflict. That doesn't do anything about his abilities as a lawyer.

> SMITH: He's assuming I will be found guilty and I would get the worst outcome.

*Id.* at 65-66.

[12]    The trial court responded:

> COURT: I had my personal views of cases I tried.  But I don't care what my personal view is.  My professional job, and I did it every time, is I exerted all of my abilities on behalf of my client despite what I thought of them.  Some of my client[s] I didn't like but I tried like hell to win cases for [th]em.  [Trial Counsel] does the same.  The State does that.  Every lawyer does that.  They have their own personal view.  And I'm not agreeing that he said that, but let's just assume worst case he said those exact words, I know every lawyer will work, well not every lawyer, most lawyers will put aside their personal view and exercise all of their training and experience on behalf of their client.  And I'll go one step further, and again Mr. Smith, I'm not trying to talk you out of it, I just want make sure we're very clear.  I've witnesse[d] [Trial Counsel] in trial, he does an excellent job.  I say that only when it actually happens. . . . Others I don't say that of. . . . It just boggles my mind that you're upset by one comment and you want to jettison a skilled trial attorney.  It just boggles my mind.  And so . . . understand that's my view, that's my opinion [of] [Trial Counsel], and you still want to represent yourself?
>
> SMITH: . . . If I let [Trial Counsel] represent me I just want him to do his job.  That's all I'm asking.
>
> COURT: Now you're qualified.  Do you want to represent yourself or not?  Today is the day.[7]

---

[7] During the December 8, 2023 hearing, Smith affirmatively indicated seven out of eight times in response to the trial court's questioning that he preferred to represent himself over having Trial Counsel represent him. On the seventh occasion, Smith renewed his request for new court-appointed counsel rather than assuring the trial court he was indeed asking to and wanted to represent himself.

SMITH: [] [N]o, but can I get a different attorney?

COURT: No.

SMITH: Okay, I'll represent myself then.

*Id.* at 66-67.

[13]     At this point, Trial Counsel informed the trial court that Smith had misrepresented what he said to the jail officer, explaining:

> TRIAL COUNSEL: That is not what I said to [the officer]. What I said was –
>
> COURT: What I tried to qualify is that –
>
> . . .
>
> COURT: - even if I took it as the worst.
>
> SMITH: Let's call him and ask him.
>
> TRIAL COUNSEL: . . . What I said was, we'll see how he's doing after the trial. That wasn't that he said it was guilty. It was just like, well let's see how he's doing after the trial. That's what I said.
>
> COURT: Mr. Smith is entitled to his opinion and his opinion is different and as a result, it's a really dumb choice, he wants to represent himself. Right?

*Id.* at 68. Smith affirmed he wanted to represent himself and agreed to keep the January 2, 2024 trial date in place.

[14] The parties next convened at a pretrial hearing on December 21, 2023. At the hearing, Smith asked how to "go about bringing [his] evidence or calling [his] witnesses." *Id.* at 75. The trial court informed him, "that's your job. You wanted to represent yourself." *Id.* Smith agreed but complained that he had asked for another attorney and was rebuffed. Specifically, Smith stated, "I said, will you give me another attorney then, and you said no. I said, well then I'll represent myself. Put that in the record, please." *Id.* at 76.

[15] At a December 28, 2023 pretrial hearing, the trial court again revisited the issue of representation. After denying various motions Smith filed that failed to contain actionable information or allegations, the trial court pointed out to Smith how these failures demonstrated Smith's lack of legal skills to proceed pro se. The trial court told Smith that, based on the court's evaluation of Smith's filings, he was "just not very good at this," and while Smith had the "right to have a lawyer," he did not have the "right to pick [his] lawyer." *Id.* at 87, 88. The trial court offered to re-appoint Trial Counsel for Smith, but Smith declined, stating "that's something I gotta deal with, I guess." *Id.* at 90.

[16] Smith represented himself on the joined causes during the three-day jury trial that began on January 2, 2024. He was found guilty of all charges. Outside the presence of the jury, Smith admitted he was a habitual offender. He was sentenced to a total term of twenty-six years in F4-1398, to be served consecutively to a total term of twenty-five months in F6-606.

## Discussion and Decision

## 1. Right to Counsel

### A. Sixth Amendment of the United States Constitution

Smith argues the trial court violated his Sixth Amendment right to counsel "when it insisted that [he] choose between forgoing counsel altogether or using an attorney who had undermined his claim of innocence." *Appellant's Br.* at 8. The Sixth Amendment to the United States Constitution guarantees that each criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The United States Supreme Court has interpreted the Sixth Amendment to protect "the right of a defendant who does not require appointed counsel to choose who will represent him." *U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006).

When a non-indigent criminal defendant is erroneously deprived of the right to counsel of their choice, "[n]o additional showing of prejudice is required to make the violation 'complete'" and, unlike ineffective assistance of counsel claims, which must be analyzed for prejudicial effect, the violation "unquestionably qualifies as 'structural error'" and is not subject to harmless-error analysis. *Id.* at 146, 150. However, while "a defendant has an absolute right to be represented by counsel, an indigent defendant does not have an absolute right to counsel of his own choosing." *Luck v. State*, 466 N.E.2d 450, 451 (Ind. 1984); *see also Gonzalez-Lopez*, 548 U.S. at 151 ("[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for

them."). A defendant's request for new court-appointed counsel is subject to the discretion of the trial court, and we review the trial court's ruling only for an abuse of discretion. *Luck*, 466 N.E.2d at 451; *Kelly v. State*, 226 N.E.3d 266, 270 (Ind. Ct. App. 2024). "If a defendant refuses to be represented by his court appointed counsel, he must 'find some method to employ his own counsel or proceed [pro se].'" *Luck*, 466 N.E.2d at 451 (quoting *State v. Irvin*, 291 N.E.2d 70, 74 (Ind. 1973)).

[19] Smith's Sixth Amendment argument focuses on the circumstances under which the trial court denied his request for a fourth court appointed counsel in just eight months. He claims that his situation is comparable to the circumstances presented in *McCoy v. Louisiana*, 584 U.S. 414 (2018).

[20] In *McCoy*, the defendant's court-appointed counsel, contrary to the instructions of the defendant, conceded the defendant's guilt to the jury in an effort to avoid the death penalty. *Id.* at 418-20. The United States Supreme Court held that this was structural error, concluding:

> [A] defendant has the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based [sic] view is that confessing guilt offers the defendant the best chance to avoid the death penalty. Guaranteeing a defendant the right "to have the *Assistance* of Counsel for *his* defence," the Sixth Amendment so demands. With individual liberty—and, in capital cases, life—at stake, it is the defendant's prerogative, not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining mercy at the sentencing stage, or to

maintain his innocence, leaving it to the State to prove his guilt beyond a reasonable doubt.

*Id.* at 417-18 (emphasis in original).

Relying on *McCoy*, Smith argues Trial Counsel "undermined [his] right to maintain his innocence" when Trial Counsel mentioned to a jail officer that Smith "would not be doing to[o] good" after his trial, and that the trial court violated his Sixth Amendment right to counsel when it required Smith to either represent himself or continue to be represented by Trial Counsel. *Appellant's Br.* at 11; *Appellant's App. Vol. 2* at 138. We disagree.

Unlike the circumstances presented in *McCoy*, the comment made by Trial Counsel was not made in the presence of a jury but instead was a passing remark to a jail officer while Trial Counsel was on speakerphone with his client about one month before trial. Trial Counsel's comment was ambiguous[8] and not part of a deliberate trial strategy. *Isom v. State*, 170 N.E.3d 623, 639 (Ind. 2021) (holding that Isom had waived any argument based on *McCoy* but observing that the witness's disputed "statements did not come from counsel,

---

[8] Smith claims the trial court "credited Smith's opinion regarding what occurred," which should affect our evaluation of his argument. *Appellant's Reply Br.* at 7. It does not. First, the trial court expressly "discount[ed] some of what [Smith] put in [his] letter." *Tr. Vol 1* at 54. Second, even assuming, arguendo, that the trial court did adopt Smith's interpretation of Trial Counsel's statement, Smith made no showing that Trial Counsel's statement interfered with his "right to insist that counsel refrain from admitting guilt." *McCoy*, 584 U.S. at 417; *see also Isom*, 170 N.E.3d at 639 (stating *"McCoy* stands for the principle that defendants get to decide the objective of their defense"). There is no evidence Trial Counsel planned to infringe upon Smith's right to maintain his innocence at trial.

and they were not explicit, part of a deliberate trial strategy, or made over Isom's objections"), *reh'g denied*. The comment made by Trial Counsel bears no resemblance to the attorney's repeated, explicit concessions of his client's guilt in *McCoy*. *See McCoy*, 584 U.S. at 419-20.

[23] After refusing Trial Counsel's representation, Smith voluntarily raised the prospect of proceeding pro se, and the trial court engaged Smith in an extensive dialogue—and vigorously conveyed the dangers and disadvantages of self-representation and discouraged Smith from self-representation—before finding him sufficiently qualified to represent himself at trial. *See Jones v. State*, 783 N.E.2d 1132, 1138 (Ind. 2003) (concluding that when a defendant asserts his or her right to proceed pro se, the trial court must "acquaint the defendant with the advantages to attorney representation and the drawbacks of self-representation").

[24] Under these circumstances, the trial court acted within its discretion when it denied Smith's request for new court-appointed counsel.[9] *See Bowie v. State*, 203 N.E.3d 535, 545 (Ind. Ct. App. 2023) ("[A]n indigent criminal defendant is not entitled to the public defender of his choice.") (citing *Gonzalez-Lopez*, 548 U.S. at 151), *trans. denied*.

---

[9] Because we conclude the trial court committed no error, we need not address Smith's contention that the trial court's error was structural.

## B. Article 1, Section 13 of the Indiana Constitution

[25] Smith argues that even if his Sixth Amendment claim fails, Article 1, Section 13 of the Indiana Constitution *should* confer a right to dismiss one's court-appointed attorney and be appointed new counsel when one "sincerely believe[s]" his attorney has undermined his claim of innocence. *Appellant's Reply Br.* at 8. Article 1, Section 13 of the Indiana Constitution declares that "[i]n all criminal prosecutions, the accused shall have the right to . . . be heard by himself and counsel." Smith cites no precedent to directly support his position but notes the broad proposition that Indiana's constitutional right to counsel "affords Indiana's citizens greater protection than its federal counterpart." *Malinski v. State*, 794 N.E.2d 1071, 1078 (Ind. 2003).

[26] However, the cases cited by Smith simply address *when* the Article 1, Section 13 right to counsel attaches and its effect on the admissibility of evidence obtained in violation of the right to counsel. *See*, *e.g.*, *id.* at 1079 (holding that incarcerated suspects have a "right under section 13 to be informed that an attorney hired by his family to represent him is present at the station and wishes to speak to him"); *State v. Taylor*, 49 N.E.3d 1019, 1024-25, 1027 (Ind. 2016) (holding that law enforcement's eavesdropping on a criminal suspect's pre-interrogation consultation with his lawyer was a violation of Section 13 and that presumptively tainted officer testimony was rebuttable only beyond a reasonable doubt). These issues are not present in this case. Rather, Smith argues that he was not only entitled to dismiss Trial Counsel but that the trial

court was required to appoint him new counsel due to his "sincere belief" that Trial Counsel had undermined his claim of innocence. Article 1, Section 13 does not provide an indigent defendant with his counsel of choice based solely on the defendant's subjective belief that his counsel would undermine his claim of innocence.[10]

## 2. The Trial Court's Discretion

Finally, Smith argues the trial court abused its discretion by failing to consider "less drastic options" "to ensure that Smith's counsel was adequately representing him." *Appellant's Br.* at 14; *Appellant's Reply Br.* at 8. Specifically, Smith argues that the trial court should have sua sponte called the jail officer to testify about the conversation central to Smith's belief that Trial Counsel had undermined his right to maintain his innocence.[11] "Trial courts are vested with inherent authority to control their own proceedings." *Parker v. State*, 567 N.E.2d 105, 110 (Ind. Ct. App. 1991), *trans. denied*. "At the same time, defendants have a right to appear in court, and to have their witnesses appear in

---

[10] We agree with the State that Smith's proposed "sincere belief" standard would effectively provide indigent criminal defendants with an "absolute right to replace counsel" and could impose an enormous burden on our public defender system. *Appellee's Br.* at 19.

[11] Smith argues the trial court should have entertained less drastic *options*, plural, but focuses entirely on one option he believes the trial court ought to have considered—that the trial court should have called the jail officer to testify about Trial Counsel's comment. Because Smith did not develop his argument further and we find *Johnson v. State*, 948 N.E.2d 331 (Ind. 2011), *cert. denied*, 565 U.S. 1214 (2012) inapposite, we consider only whether the trial court abused its discretion by declining to summon the jail officer to testify.

court[.]" *Id.* "We will reverse a decision of the trial court regarding the conduct of proceedings only for an abuse of discretion." *Id.*

[28] Here, the trial court's decision to forgo calling the jail officer to testify was not an abuse of discretion because at the December 8, 2023 hearing, the trial court took Smith at his word about what Trial Counsel said and *still* denied Smith's request for new counsel. The trial court stated, "I'm not agreeing that he said that, but let's just assume worst case he said those exact words[.]" *Tr. Vol. 1 at 66.* The trial court then explained that all attorneys have personal views of their clients but are obliged to "put aside their personal view and exercise all of their training and experience on behalf of their client." *Id.* Thus, as the trial court attempted to explain, even if the jail officer was summoned to testify and recounted the conversation exactly as Smith remembered it, this would not be a sufficient basis to replace Trial Counsel with a fourth attorney less than a month before Smith's trial. *See Johnson v. State*, 948 N.E.2d 331, 338 (Ind. 2011) ("[W]here appointed counsel has a track record of the professional misconduct complained of, the judge should at a minimum require assurance from the public defender's office that the issue will be resolved."), *cert. denied*, 565 U.S. 1214 (2012).[12]

---

[12] The trial court ensured that Smith understood it did not agree with Smith's decision to abandon the assistance of an "excellent," "skilled trial attorney" over a miscommunication or routine disagreement. *Tr. Vol. 1* at 66-67.

## Conclusion

[29] The trial court did not abuse its discretion or violate Smith's right to counsel under the United States or Indiana Constitutions when it allowed Smith to dismiss Trial Counsel from his case and denied his request for a new court-appointed attorney. Further, the trial court did not abuse its discretion when it declined Smith's request for additional testimony on the matter.

[30] Affirmed.


May, J., and Tavitas, J., concur.

ATTORNEY FOR APPELLANT

Mark Kelly Leeman
Logansport, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Ian Alexander Thomas McLean
Supervising Deputy Attorney General
Indianapolis, Indiana