Gary Ray CARDWELL, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 82A01–8707–CR–181.

Court of Appeals of Indiana,
First District.

Dec. 21, 1987.

Rehearing Denied Jan. 20, 1988.

John P. Brinson, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Gary Ray Cardwell appeals his conviction of two counts of child molesting, class B and C felonies.

We affirm.

Cardwell presents four issues in this appeal:

(1) Whether the trial court committed reversible error by denying Cardwell's motion for mistrial;

(2) Whether the trial court abused its discretion when it determined that the victims were competent to testify;

(3) Whether the trial court erred in giving final instruction 12 and defendant's tendered instruction 3; and,

(4) Whether the evidence is sufficient to support the jury's verdict.

## I.

Cardwell argues that the trial court committed reversible error by failing to grant a mistrial. His allegation of error stems from a comment made by the trial court during the State's direct examination of the seven-year-old victim, T.P.

The record reflects that throughout the direct examination of the victim which preceded the comment and motion for mistrial, the prosecuting attorney was having difficulty getting the witness to make *any* response to his questions. There were numerous statements both from the prosecutor and the judge to the victim that nothing bad would happen to her if she told what happened. The court expressed concern about the victim's apparent emotional strain and thereafter granted a five minute recess to permit the victim some time with her grandmother. Shortly after direct examination resumed, the State offered the victim an anatomically correct doll and urged the victim to touch the area she had previously identified at trial as the area where she had been touched by the defendant. The record discloses that the prosecutor asked the victim at least five times to touch the doll but the victim continued to refuse. The court then stated to the prosecutor, "I think she has been through enough trauma." The defendant moved for a mistrial in the presence of the jury, arguing that the comment reflected the court's belief as to his guilt or innocence and asking that the jury be admonished to disregard the comment. The court gave the following admonition:

> The Court notices that the child has refused three or four times to do the touching, and the Court believes that is a sufficient number of requests. The jury is admonished that whatever the Court said had no bearing on the relevancy on the weight of the testimony to be given. That is purely a jury function....

Cardwell maintains that the judge's comment to the prosecutor indicated to the jury the judge's belief that the victim was telling the truth, and went beyond the bounds of good judgment in rectifying the prosecutor's questioning. Cardwell also argues that the court's response to his objection amounted to an after-the-fact rationalization and did not cure the prejudice caused by the remark because the admonition permitted the jury to consider the comment in determining the weight to be given the testimony. Accordingly, Cardwell con-

tends a mistrial should have been granted. We disagree with Cardwell's premises as well as his conclusion.

While in retrospect the court's direction to the prosecution might have been more carefully phrased, when placed in context the directive was wholly innocent. The court had already expressed concern over the victim's well-being in the presence of the jury and had used a recess as a means of facilitating the victim's testimony. The trial judge decided that it was necessary for him to admonish counsel so that the orderly process of the trial might continue. This action was reasonable since it was apparent that the prosecution's persistence would have served no purpose at that point other than to further intimidate the victim. The trial judge had a responsibility to preside over the trial and control the proceedings by taking responsible steps to insure proper order and discipline. *Marbley v. State* (1984), Ind., 461 N.E.2d 1102, 1107. Implicit in the judge's duty to control the proceedings is the power to give reasonable admonitions to the witnesses and counsel and direct the taking of testimony. *Brooks v. State* (1986), Ind., 497 N.E.2d 210, 219.

Cardwell's interpretation of the trial judge's statement rests upon innuendo and consideration of the statement in isolation. We believe it extremely unlikely that the jury would have interpreted the comment as Cardwell alleges under the circumstances as they existed at the time the comment was made. Furthermore, Cardwell does not direct us and we have not discovered any other place in the record where the trial judge could be said to have acted partially. Therefore, we cannot agree with Cardwell that the trial court's conduct so unduly prejudiced him that an admonition would not cure any harm which resulted from the remark.

Additionally, we would point out that the granting of a mistrial is a dire action which should be resorted to only when no other remedy will rectify the situation. Ordinarily, no reversible error will be found if curative measures are taken. *Hill v. State* (1986), Ind., 497 N.E.2d 1061, 1067. Here, the court's curative statement to the jury made clear that the comment was directed to the repetitive nature of the questioning and was not intended to give weight to the victim's testimony. It was brief but a reasonable response to the situation. Accordingly, we conclude that the trial court acted without abusing its discretion in denying Cardwell's motion for mistrial.

## II.

Cardwell contends the trial court abused its discretion in determining that the victims, T.P. and M.E.B., were competent to testify. To establish that each witness knew the difference between telling the truth and telling a lie, the prosecutor stated the color of a particular object and asked each witness whether he was telling the truth. Cardwell maintains that these questions established only that the girls knew color. He argues that the record reflects that T.P. did not actually comprehend the distinction between truth and falsity because she could not or would not articulate the difference. He points out that T.P. did not know what an oath was, and there was no evidence she understood what it meant to swear to God. Cardwell argues that M.E.B. was incompetent to testify because she gave a wrong answer during the series of questions about the colors and did not know what a promise was.

Under IND.CODE 34–1–14–5, a witness under ten years of age is presumed to be incompetent unless it appears that the child understands the nature and obligation of an oath to tell the truth. The statutory imposition of incompetency is removed if the trial court can find (1) that the child knows the difference between telling the truth and telling a lie, and (2) that the child realizes that he or she is under some compulsion to tell the truth. *Jones v. State* (1984), Ind., 464 N.E.2d 1283, 1284. The determination of a child's competency lies within the trial judge's discretion since the trial judge has the opportunity to observe the child's intelligence, demeanor and maturity. *Peters v. State* (1984), Ind., 470 N.E.2d 708, 710.

"In reviewing such a determination, we recognize that our examination of the transcribed record of the questioning cannot compare with the trial court's personal presence at the hearing as a basis for resolution of the issue. We, therefore, entrust this determination to the discretion of the trial court and will reverse only where we find clear error, where there is no evidence from which the trial court could have found that the child understood the nature and obligation of an oath." *Johnson v. State,* [(1977) ], 265 Ind. [689] at 692, 359 N.E. 2d [525] at 528.

*LeMaster v. State* (1986), Ind., 498 N.E.2d 1185, 1187.

▬▬ Applying the *Johnson* standard enunciated above, we conclude that there was evidence from which the trial court could have determined that both children were competent to testify. Cardwell argues that the series of questions relating to colors asked of each witness demonstrated only that they knew color, not that they knew the difference between truth-telling and mendacity; however, the questions as phrased and the responses given support the inference that the witnesses recognized the distinction. Whether the children actually understood the difference was for the trial court to determine. We must accept the trial court's evaluation of the witnesses' responses.

Moreover, we believe the record amply supports the trial court's determination that the children understood the obligation of an oath. Both girls indicated that they would get soap in their mouths if they did not tell the truth and M.E.B. told the court that one goes to the devil if one lies. While T.P. did not know what an oath was and M.E.B. could not explain what it means to promise, a child need not be able to define these terms to be a competent witness. *LeMaster, supra* at 1188. Both witnesses demonstrated to the trial court that they felt a compulsion to tell the truth. This is sufficient.

### III.

Cardwell contends the trial court erred in giving the court's instruction No. 12 and refusing his tendered instruction No. 3. The trial court's instruction No. 12, which deals with the count I charge of child molesting as a class B felony, tracks the language of I.C. 35–42–4–3–(a). Cardwell's proposed instruction defined the offense in the same manner but incorporated the crime's mens rea by listing it as a distinct element. Cardwell's complaint is that the trial court's instruction purports to set forth all the essential elements of the crime but omits an essential element, namely culpability, rendering the instruction fatally defective.

As the State points out, Cardwell has not complied with Ind. Rules of Procedure, App. Rule 8.3(A)(7) in that the record does not contain Cardwell's verbatim objections to the trial court's instruction, subjecting the issue to waiver. While the burden of providing an appellate court with a proper record is on the appellant, the record in this case is not so insufficient as to preclude a consideration of the assigned error. The record contains both the trial court's instruction and Cardwell's proposed instruction as well as a notation indicating that Cardwell objected to two instructions, Nos. 15 and 12.

The basis of Cardwell's objection to instruction No. 12 was its failure to advise the jury that "knowingly and intentionally [was] an element of the offense." The court's instruction No. 14, defining the charge of child molesting in count II, suffers from the same alleged deficiency as instruction No. 12 but the record does not reflect that Cardwell objected to this instruction or tendered an alternative. Hence, Cardwell has preserved error only with respect to the class B child molesting conviction. *Smith v. State* (1984), Ind., 459 N.E.2d 355. *See also, Snider v. State* (1984), Ind., 468 N.E.2d 1037 (trial court's failure to incorporate mens rea in instruction on child molesting not fundamental error).

▬▬ Regardless of the fact that there is no specific mention of any criminal intent or mens rea in the relevant portion of the child molesting statute, mens rea is an element of the crime of child molesting.

*Mullins v. State* (1985), Ind.App., 486 N.E. 2d 623, 625; *Newton v. State* (1983), Ind. App., 456 N.E.2d 736, 739, n. 1. *See also Snider v. State, supra.* Thus, the question is whether the instructions, when read together as a whole, informed the jury that Cardwell's conduct must have been knowing or intentional in order for him to be guilty of child molesting.

■ We note initially that the instruction at issue "utilizes words which refer to deliberate injurious conduct, words which in their plain meaning would be understood by the jury as including criminal intent." *Snider, supra* at 1039. The record indicates that immediately following this instruction, the trial court gave an instruction defining the lesser included offense of battery which specified that knowing or intentional conduct was required for the commission of a battery. The next instruction distinguished battery from child molesting "by the absence of certain elements, to-wit: the element of criminal deviate conduct, and the requirement that the alleged victim be less than a certain age." These instructions were followed by an instruction defining "knowingly" and "intentionally" and were preceded by a charge to consider together all instructions as a whole. When the instructions are considered together as they must be, they adequately informed the jury that Cardwell must have performed deviate sexual conduct with M.E.B. knowingly; accordingly, we find no reversible error.[1] *See Voss v. State* (1984), Ind.App., 469 N.E.2d 788, 791 (Jury sufficiently informed of culpability requirement for burglary by second instruction defining offense of theft.)

### IV.

Cardwell's fourth allegation of error concerns the trial court's denial of his motion for judgment on the evidence on both counts which was made at the close of the evidence. Cardwell contends the State failed to prove the material elements of each offense by sufficient credible evidence. He points to inconsistencies in the victims' testimony and argues that their accounts are inherently improbable because the girls' parents, who were sleeping in an adjoining room, testified that they did not hear or see anything.

■ Essentially, Cardwell is asking us to redetermine witness credibility, a task which we may not undertake on review. The jury was informed of the discrepancies in the victims' accounts and heard the parents testify. It is the jury's responsibility to determine whether testimony is contrived and to generally judge the credibility of witnesses. This court will not in any way impinge on that responsibility unless confronted with "inherently improbable" testimony or coerced, equivocal, wholly uncorroborated testimony of "incredible dubiosity." *Bedwell v. State* (1985), Ind., 481 N.E.2d 1090, 1092. The lack of corroborating medical or physical evidence and the improbability of the events occurring as described because of the presence of other children or adults in the immediate vicinity does not, of itself, render the uncorroborated testimony of the victims insufficient to sustain a child molesting conviction. *See e.g., Morrison v. State* (1984), Ind., 462 N.E.2d 78, 79.

■ By count I of the information, the State charged Cardwell with child molesting by performing deviate sexual conduct with M.E.B., age four. M.E.B.'s testimony supports the inference that Cardwell kissed her on the genitals and rubbed her genitals with his penis. Count II alleges that Cardwell performed fondling and touching of T.P., age seven, with the intent to arouse and satisfy his sexual desires. T.P. testified that Cardwell kissed her genitals and touched her genitals with his fingers. This evidence is sufficient to sustain the conviction.

Judgment affirmed.

NEAL and HOFFMAN, JJ., concur.

---

1. Considering a nearly identical instruction to the one involved here, our supreme court noted that the instruction did not preclude the defense from proving or arguing that any touching of the child was innocent. *Snider,* 468 N.E.2d at 1039. Cardwell denied any contact with the victims.