**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 14 2014, 9:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ELLEN M. O'CONNOR**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CLEVELAND MUNOZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1307-CR-567 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
The Honorable Stanley Kroh, Commissioner
Cause No. 49G03-1302-FC-9606

**March 14, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Cleveland Benages Munoz (Munoz), appeals his conviction for two Counts of child molesting, Class C felonies, Ind. Code § 35-42-4-3(b).

We affirm.

## ISSUE

Munoz raises one issues on appeal which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt to sustain his conviction for two Counts of child molesting.

## FACTS AND PROCEDURAL HISTORY

E.M. was born on September 2, 2005, and lived in a two-bedroom apartment in Marion County, Indiana with her mother, Amanda Moore (Amanda), her older sister, M.M, her younger sister, and her younger twin brothers. E.M.'s father, Chazell Moore (Chazell), lived in the upstairs apartment together with his fiancee, Kimberly Sutton (Kimberly), and Kimberly's three children. From December 2012 to February 2013, Amanda's boyfriend, Munoz, lived with Amanda and her children. Amanda worked during the day; Munoz, Chazell, and Kimberly would watch the children while she was at work. Munoz would look after the children in the downstairs apartment; Chazell and Kimberly would watch them in the upstairs apartment.

E.M. did not care for Munoz. Munoz "singled out" E.M. (Transcript p. 107). He told her "not to eat so much" and that she was getting fat. (Tr. p. 87). He "pulled" M.M. out in front of E.M. "and told [her] this is what she's supposed to look like." (Tr. p. 107).

2

One December morning in 2012, when Amanda was at work, Munoz, E.M. and the twin boys were in the master bedroom, which was furnished with a television. Munoz told the twins to leave the bedroom. He was lying on the bed and told E.M. to come up to the bed. Munoz was wearing boxer shorts and E.M. was wearing a big shirt, underwear, and a bra. The twins kept "popping in the room" and Munoz "kept on saying 'get out.'" (Tr. pp. 70, 72). When the twins left, Munoz took E.M.'s hand and asked, "Do you want it?" (Tr. p. 69). He placed E.M.'s hand on his penis, which was hard, on the outside of his boxers. E.M. was scared and left the bedroom.

Sometime in January 2013, E.M. asked her mother if she could sleep in her mother's bed. Amanda and Munoz were sleeping in the children's bedroom and E.M. "wanted to be away from" Munoz. (Tr. p. 73). After Amanda went to work, Munoz woke up E.M. when he entered the bedroom and climbed on top of her. E.M. was wearing underwear and her mother's shirt; Munoz was wearing boxer shorts. Munoz "started rubbing his body up against [her];" he was "on top of [her] going up and down on [her] body." (Tr. p. 74). He rubbed his penis, which was hard, on her vagina. E.M. felt hot and started to sweat. Munoz "started breathing hard," and asked E.M. if she wanted to go back to sleep or take a shower. (Tr. p. 76). E.M. showered.

Later that day, E.M. told her older sister what had happened. M.M. advised her to inform their mother. When Amanda returned home from work, E.M. told her Munoz "has been touching me." (Tr. p. 77). Amanda confronted Munoz and Munoz informed E.M. that whenever Amanda was at work, she was no longer allowed to stay in the apartment and instead had to go upstairs to her father's apartment. Amanda did not call

3

the police because she "[d]idn't want to believe somebody that, you know, that I loved and I thought loved me would ever do anything like that." (Tr. p. 110).

On February 10, 2013, the children were playing in a closet in the downstairs apartment when they broke a water pipe. Munoz yelled at them and sent E.M. upstairs to her father's apartment. Chazell and Kimberly were getting ready to attend church and tried to send her back downstairs. E.M. refused to go back downstairs and became "teary eyed." (Tr. p. 32). She stood very close to Chazell and had her arms around his arm, she was crying. E.M. explained to her father what Munoz had done to her. Chazell "yelled" to Kimberly to call the police, grabbed a baseball bat, and went downstairs "to have a talk" with Munoz. (Tr. pp. 32, 33). When Chazell confronted Munoz, Munoz replied, "I don't touch little girls. I don't touch kids." (Tr. p. 33). Munoz left the apartment, wearing only sweatpants. The police later found him, sitting on a stairwell outside of an apartment on the other side of the complex.

On February 12, 2013, the State filed on Information charging Munoz with four Counts of child molesting, Class C felonies, I.C. § 35-42-4-3(b). On May 22, 2013, the trial court conducted a jury trial. During the proceedings, the trial court granted Munoz' motion for a directed verdict on Count III. At the close of the evidence, the jury found Munoz not guilty of Count I, but guilty of Counts II and IV. On June 11, 2013, during a sentencing hearing, the trial court sentenced Munoz to concurrent sentences of four years, with, on each sentence, two years suspended to probation.

Munoz now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

4

Munoz argues that the State failed to present sufficient evidence beyond a reasonable doubt to sustain his conviction for two Counts of child molesting. When reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses. *Walker v. State*, 984 N.E.2d 642, 644 (Ind. Ct. App. 2013). We may look only to the evidence most favorable to the judgment and reasonable inferences therefrom and will affirm if we conclude that evidence of probative value exists such that a reasonable fact finder could find the elements of the underlying crime proven beyond a reasonable doubt. *Id.*

In order to convict Munoz of child molesting as a Class C felony, the State was required to establish beyond a reasonable doubt that Munoz, with a child under fourteen years of age, had performed or submitted to any fondling or touching, of either E.M. or Munoz, with intent to arouse or to satisfy the sexual desires of either E.M. or Munoz. *See* I.C. § 35-42-4-3(b). Mere touching alone is insufficient to constitute the crime of child molesting. *Nuerge v. State*, 677 N.E.2d 1043, 1048 (Ind. Ct. App. 1997), *trans. denied*. The State must also prove beyond a reasonable doubt that the act of touching was accompanied by the specific intent to arouse or satisfy sexual desires. *Id*. The intent element of child molesting may be established by circumstantial evidence and may be inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points. *Id*.

Munoz contends that the State failed to establish that he "acted with the intent to arouse or satisfy either his sexual desires or those of E.M." (Appellant's Br. p. 7). A child molesting conviction may rest on a minor victim's uncorroborated testimony.

5

*Feyka v. State*, 972 N.E.2d 387, 393 (Ind. Ct. App. 2012), *trans. denied.* Here, Munoz was found guilty of two instances of child molesting. With respect to the first conviction, E.M. testified that in December 2012, she was in the master bedroom, together with Munoz and her twin brothers. After Munoz had ordered her brothers out of the room, he told E.M. to join him on the bed. He took her hand and placed it on top of his boxer shorts. She testified that she could feel his penis, which was hard. We have consistently held that the intentional touching of genitals amounts to circumstantial evidence of intent to arouse. *See, e.g., Rodriguez v. State*, 868 N.E.2d 551, 553-54 (Ind. Ct. App. 2007). There is no doubt here that, based on E.M.'s testimony, Munoz was aroused.

With respect to the second conviction, E.M. testified that Munoz woke her up when she was sleeping in the master bed. She stated that he climbed on top of her and rubbing his body up against her. He rubbed his penis on her vagina. E.M. noticed that his penis was hard. She felt hot and started to sweat; Munoz "started breathing hard." (Tr. p. 76). Again, E.M.'s testimony is sufficient to support that Munoz intended to arouse himself and actually became aroused.

Munoz now attempts to explain E.M.'s testimony as the statements of a "forlorn middle child" who felt disfavored by her mother's boyfriend and who thought he was mean. (Appellant's Br. p. 7). He asserts that she fabricated the molestations to "deflect attention away from her." (Appellant's Br. p. 6). Our review of the record reflects that the jury was informed about the animosity that existed between E.M. and Munoz by E.M. and Munoz themselves. The jury also heard and saw E.M.'s parents and older sister testify. It is the jury's responsibility to determine whether testimony is contrived and to

6

generally judge the credibility of witnesses. *Cardwell v. State*, 516 N.E.2d 1083, 1087 (Ind. Ct. App. 1987), *reh'g denied, trans. denied*. "The lack of corroborating medical or physical evidence and the improbability of the events occurring as described because of the presence of other children or adults in the immediate vicinity does not, of itself, render the uncorroborated testimony of the victim insufficient to sustain a child molesting conviction. *Id.* Based on the evidence before us, we conclude that the State presented sufficient evidence beyond a reasonable doubt to establish that Munoz committed the acts of child molestation with the intent to become aroused.

## CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence beyond a reasonable doubt to sustain Munoz' conviction for two Counts of child molesting.

Affirmed.

VAIDIK, C. J. and MAY, J. concur