# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 03 2017, 6:23 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Scott King
Russell W. Brown, Jr.
Scott King Group
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Alric Bolt,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 3, 2017

Court of Appeals Case No.
20A05-1602-PC-383

Appeal from the Elkhart Superior Court

The Honorable Teresa L. Cataldo, Judge

Trial Court Cause No.
20D03-1103-PC-8

**Bailey, Judge.**

# Case Summary

Appellant-Petitioner Alric Bolt ("Bolt") appeals the denial of his petition for post-conviction relief, which challenged his convictions for Child Molesting. He presents the issue of whether he was denied the effective assistance of trial counsel. We affirm.

# Facts and Procedural History

On direct appeal, a panel of this Court recited the relevant facts as follows:

> On July 24, 2007, forty-year-old Bolt insisted that his girlfriend's eleven-year-old daughter, M.W., take a shower with him. While in the shower, Bolt washed M.W. with his hands. He touched M.W.'s breasts and genital area. Bolt also placed a finger inside of M.W.'s labia. He washed M.W.'s buttocks and inner thighs. Bolt then told M.W. to wash him. M.W. began to wash his chest but he moved her hand to his penis and made her wash it. While this occurred, Bolt closed his eyes and tilted back his head. Bolt then said he was done and left the shower. When asked about the incident by Mother, Bolt claimed that he had just washed M.W.'s hair.
>
> On September 5, 2007, the State charged Bolt with two counts of Class C felony child molesting. On July 24, 2008, the State added a count of Class A felony child molesting. Following a three-day jury trial which began on May 4, 2009, Bolt was found guilty as charged. On May 28, 2009, the trial court sentenced Bolt to concurrent terms of five years on each of the Class C felony child molesting and thirty-five years for the Class A felony child molesting.

*Bolt v. State*, No. 20A03-0907-CR-335, slip op. at 1 (Ind. Ct. App. Feb. 23, 2010).

[3] On direct appeal, Bolt alleged that the trial court had abused its discretion by admitting photographs Bolt had taken of M.W. that showed M.W. in various stages of undress. *See id.* He also alleged that the State committed prosecutorial misconduct. Bolt's convictions were affirmed and the Indiana Supreme Court denied Bolt's petition for transfer.

[4] On March 8, 2011, Bolt filed a pro-se petition for post-conviction relief. With assistance of counsel, he amended his petition. An evidentiary hearing was conducted on July 9, 2015. On January 21, 2016, the post-conviction court issued findings of fact and conclusions thereon and an order denying Bolt post-conviction relief. He now appeals.

# Discussion and Decision

## Standard of Review

[5] The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment of the post-conviction court unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the

post-conviction court. *Id.* A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* In this review, findings of fact are accepted unless they are clearly erroneous and no deference is accorded to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

## Effectiveness of Trial Counsel

[6] Bolt contends he was denied the effective assistance of trial counsel in three respects: trial counsel (1) failed to confront M.W. with prior inconsistent statements; (2) failed to challenge a jury instruction on the elements of child molesting; and (3) failed to lodge proper objections when M.W.'s aunt testified concerning M.W.'s revelation of having been molested.

[7] Effectiveness of counsel is a mixed question of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in *Strickland*. *Id.* To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and resulting prejudice. *Dobbins v. State*, 721 N.E.2d 867, 873 (Ind. 1999) (citing *Strickland*, 466 U.S. at 687). Deficient performance is that which falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687; *see also Douglas v. State*, 663 N.E.2d 1153, 1154 (Ind. 1996). Prejudice exists when a claimant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Cook v. State*, 675 N.E.2d 687, 692 (Ind. 1996). The two prongs of the *Strickland* test are separate and independent inquiries. *Strickland*, 466 U.S. at 697. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice…that course should be followed." *Id.*

[8] We "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002). Counsel is to be afforded considerable discretion in the choice of strategies and tactics. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). Counsel's conduct is assessed based upon the facts known at the time and not through hindsight. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997). We do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests. *Id.* In sum, trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside the objective standard of reasonableness. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998).

[9] Initially, Bolt complains that his trial counsel, having selected a defense strategy of attacking the complainant's credibility, nevertheless "failed to confront and impeach M.W. with prior inconsistent statements." Appellant's Br. at 15. According to Bolt, M.W. made inconsistent statements: first, when she stated in

her deposition that Bolt stopped washing at her knees but claimed at trial that he touched her vagina, and second, when she stated in her deposition that her sisters were gone to the library for 15 minutes and later testified that they were gone for one hour.

[10]     Despite Bolt's suggestion of changing allegations, the essence of M.W.'s testimony – both at deposition and at trial – was that Bolt had touched her breasts and vagina. In the deposition, some categorization of body parts took place. Defense counsel asked if Bolt had washed M.W.'s breasts and asked if there was "any other part" washed. (Deposition Tr. at 48.) M.W. testified that Bolt had washed her "butt" and stomach; defense counsel then asked, in isolation, about legs:

> Question:  Did he wash your legs?
>
> M.W.:  Yes.
>
> Question:  How far up your legs did he go?
>
> M.W.:  He did about to my knees.
>
> Question:  He did it to your knees?  Did he go up any farther than that?
>
> M.W.:  No.

(Deposition Tr. at 49-50.) Defense counsel then asked if there was "any other part" washed and M.W. responded that she couldn't think of any. (Deposition Tr. at 50.)

[11] Thereafter, M.W. testified that Bolt "stuck his hand in between [her] legs" and this area was in the "front part" of the "butt." (Deposition Tr. at 79-80.) She demonstrated and described the motion of Bolt's fingers. Looking at the deposition testimony as a whole, it is apparent that M.W. considered her vaginal area to be part of her "butt." Moreover, M.W.'s testimony does not support Bolt's suggestion that M.W. once claimed Bolt had confined his touching to the area below her knees. M.W. claimed in her deposition that Bolt rubbed between her legs; at trial, she testified to the same conduct but added more specificity. We find no blatant inconsistencies unaddressed by defense counsel.

[12] When she was deposed, M.W. was asked "how long [the sisters] were at the library" and she responded "fifteen minutes." (Deposition Tr. at 45.) At trial, she testified that it was a fifteen-minute walk from the house to the library and that, in total, her sisters had been gone one hour. At the post-conviction hearing, trial counsel testified that he did not focus on the time discrepancy because "whether it was 20 minutes or one hour," there was time for the alleged act to occur. (P.C.R. Tr. at 116.) It is also noteworthy that the eldest of the sisters testified at trial that Bolt told her to take the younger siblings to the library and to be back "no sooner than six." (Tr. at 384.) She specified that they were gone for about one hour. In these circumstances, defense counsel's

decision not to attack the timeline falls within an objective standard of reasonableness.

[13]     According to Bolt, his trial counsel should have challenged M.W.'s credibility by calling her former Sunday School teacher to testify. Apparently, the teacher was listed as a potential witness, and she allegedly knew that M.W. had mis-represented her attendance record in order to obtain a prize, a cross necklace. Bolt does not explain how this evidence would have been admissible in light of Indiana Evidence Rule 608(b) (providing that, generally, "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness").

[14]     Next, Bolt contends that his defense counsel acquiesced when the trial court gave inadequate jury instructions as to the State's burden of proof. Bolt was charged with three violations of Indiana Code Section 35-42-4-3, one as a Class A felony and two as Class C felonies. At that time, this statute provided in relevant part:

> A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if it is committed by a person at least twenty-one years of age. . . .

> A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits Child Molesting, a Class C felony.

Final Instructions 2 through 6 recited the statutory language and instructed the jury that conviction of a Class C felony required the State to prove Bolt (1) performed or submitted to fondling or touching of M.W. (2) with the intent to arouse or satisfy the sexual desires of Bolt or the victim (3) when M.W. was under age 14 and that conviction of a Class A felony required the State to prove Bolt (1) performed or submitted to deviate sexual conduct with M.W. (2) when M.W. was under age 14 and (3) Bolt was at least 21 years of age.

[15] Instructions 2 through 6 do not address the mens rea requirement. Bolt directs our attention to *Louallen v. State*, 778 N.E.2d 794, 797 (Ind. 2002), wherein our Indiana Supreme Court found "knowing" conduct to be the appropriate standard of culpability for a child molesting offense and clarified that, although the child molesting statute was silent as to a mens rea requirement: "we … have nevertheless long held that criminal intent is an element of the offense."

[16] Bolt then argues that his trial counsel performed deficiently when he did not proffer an instruction similar to the Pattern Jury Instruction given in *Louallen*, specifically:

> To convict the defendant, the State must have proved each of the following elements beyond a reasonable doubt: The Defendant (1) knowingly or intentionally (a) performed any fondling or touching of [V.K.], (b) with the intent to arouse or satisfy the sexual desires of Randy S. Louallen (2) when [V.K.] was a child under fourteen (14) years of age.

*Id.* At 795-96. Our Supreme Court held that the trial court did not err when it instructed the jury that the defendant could be convicted under Ind. Code § 35-

42-4-3(b) for "knowingly or intentionally" fondling the victim with intent to arouse or gratify himself or the child. *Louallen*, 778 N.E.2d at 798. However, the Court did not instruct trial courts to use a singular instruction in the future combining both the statutory elements and the mens rea requirement. Rather, the Court re-iterated that instructions are to be read as a whole. *Id.* at 797 (citing *Cardwell v. State*, 516 N.E.2d 1083, 1087 (Ind. Ct. App. 1987)).

[17]     In *Cardwell*, the defendant in a child molesting case had objected to an instruction that tracked statutory language but failed to advise the jury that "knowingly and intentionally [was] an element of the offense." 516 N.E.2d at 1086. Finding no reversible error, the Court first observed:

> Regardless of the fact that there is no specific mention of any criminal intent or mens rea in the relevant portion of the child molesting statute, mens rea is an element of the crime of child molesting. . . . Thus, the question is whether the instructions, when read together as a whole, informed the jury that Cardwell's conduct must have been knowing or intentional in order for him to be guilty of child molesting.

*Id.* at 1086-87 (internal citations omitted). The Court noted that the instruction at issue, tracking statutory language, referred to deliberate injurious conduct and would in its plain meaning be understood by the jury as including criminal intent. *Id.* at 1087. The jury had been given a separate instruction defining "knowingly" and "intentionally." Also, the jury had been instructed to consider the instructions as a whole. *See id.* Considered as a whole, the

instructions had informed the jury that Cardwell must have performed deviate sexual conduct with the victim knowingly.  *Id.*

[18]   In light of this background, we evaluate counsel's performance with regard to jury instruction.  He neither objected to the elements instruction given nor tendered his own.  However, the record discloses that, as in *Cardwell*, the jury was adequately informed that Bolt must have performed deviate sexual conduct with M.W. knowingly.  This is so for like reasons: the statutory language referenced deliberate injurious conduct and the jury would be led to understand that Bolt must have acted with criminal intent; Final Instruction 7 informed the jury that a person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so; and the jury was instructed to consider the instructions as a whole.  Additionally, the Amended Information was read to the jury; in each count, the State alleged that Bolt performed his conduct knowingly.  Bolt has not demonstrated that his trial counsel performed deficiently in acquiescing to the jury instruction.

[19]   Finally, Bolt claims that his trial counsel should have exerted additional efforts – beyond his hearsay objections and argument – to limit the testimony of M.W.'s aunt, Rhonda Hill ("Hill") in the State's case-in-chief and rebuttal.  During its case-in-chief, the State elicited testimony from Hill that she had called the police.  When Hill began a response with "My niece had told me that," defense counsel objected and a bench conference ensued.  (Tr. at 285.)  The State argued that Hill's anticipated response was not hearsay, as it was not offered for the truth of the matter asserted, but to show why the criminal

investigation was initiated. The trial court instructed the State to take a "minimalist" approach and ultimately, Hill testified: "M.W. had told me she had been molested." (Tr. at 287.) Later, in response to a juror's question, Hill clarified that M.W. had not actually used the word "molested." (Tr. at 296.)

[20] Bolt cites *Blount v. State*, 22 N.E.3d 559, 565 (Ind. 2014) for the proposition that "course of investigation testimony is excluded from hearsay only for a limited purpose: to 'bridge gaps in the trial testimony that would otherwise substantially confuse or mislead the jury.'" (internal citation omitted.) According to Bolt, the testimony was unnecessary in his case and the prejudice to him is apparent because a juror was prompted to seek clarification. In *Blount*, our Indiana Supreme Court acknowledged that the use of course-of-investigation evidence may be abused and there is a risk that the jury will rely upon the out-of-court assertion as substantive evidence of guilt. *Id.* at 566. Nevertheless, where there is a statement asserting a fact susceptible of being true or false, and there is a non-hearsay purpose for the proffered statement, its probative value is to be weighed against the risk of unfair prejudice. *Id.* at 567.

[21] Here, the statement as to Bolt's conduct was susceptible of being true or false but was offered to show why the police investigation was initiated. It is unfortunate that the word "molested" was used as it clearly has potential to heighten prejudice. However, Hill clarified that M.W. did not actually use that word. Although it would have been preferable to have the word entirely excluded from Hill's testimony, trial counsel was not obliged to ensure that Bolt

was tried in a proceeding free of all error and prejudice. *Autrey*, 700 N.E.2d at 1141.

[22] During the rebuttal portion of the trial, Hill was asked what M.W. had told her, and defense counsel again lodged a hearsay objection. The State argued that, under Evidence Rule 801(d), a statement is not hearsay if it is a prior consistent statement offered to rebut an express or implied charge that the declarant recently fabricated it. Bolt's objection was overruled and Hill testified:

> M.W. had told me that Alric had made her take a shower with him, and that he touched her all over. She went around her breast area and down between her legs. . . . M.W. rubbed her hands acrossed [sic] her chest and down between her legs for me.

(Tr. at 447.) Bolt now argues that the foundation for 801(d) admission was not met and his defense counsel should have objected accordingly. Bolt claims that there was no express or implied charge that M.W. fabricated her allegations. Our review of the record leads us to disagree. Bolt called M.W.'s mother ("Mother") to testify in his defense. Mother testified that she had questioned M.W. and that M.W. had denied touching Bolt and also denied that Bolt touched her. According to Mother, Bolt had "forced her to get in the shower with him." (Tr. at 436.) She claimed to have been told only that Bolt washed M.W.'s hair. In light of this testimony, defense counsel's omission to provide additional argument concerning the admission of rehabilitative testimony was within the realm of reasonable professional judgment.

# Conclusion

[23] Bolt has not demonstrated that he was denied the effective assistance of trial counsel.

[24] Affirmed.


Najam, J., and May, J., concur.