## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 12 2018, 10:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kevin D. Moore,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 12, 2018

Court of Appeals Case No.
84A05-1711-CR-2533

Appeal from the Vigo Superior Court

The Honorable Sarah K. Mullican, Judge

Trial Court Cause No.
84D03-1511-FA-2927

**Pyle, Judge.**

# Statement of the Case

Kevin D. Moore ("Moore") appeals, following a jury trial, his convictions for Class A felony child molesting,[1] Level 6 Felony attempted sexual misconduct with a minor,[2] and two counts of Class D felony child solicitation.[3] Moore argues that there was insufficient evidence to support his convictions, contending that the victim's testimony was incredibly dubious. Concluding that the incredible dubiosity rule is not applicable because the victim's trial testimony was not inherently improbable or equivocal and that Moore's argument is nothing more than a request to reweigh the jury's determination of witness credibility, we affirm his convictions.

We affirm.

# Issue

Whether sufficient evidence supported Moore's convictions.

---

[1] IND. CODE § 35-42-4-3(a)(1). Effective July 1, 2014, a new version of this child molesting statute was enacted, and Class A felony child molesting is now a Level 1 felony. Because Moore committed this offense in 2012-2013, we will refer to the statute in effect at that time.

[2] I.C. §§ 35-42-4-9; 35-41-5-1. Moore committed this offense in December 2014. We note that an amended version of INDIANA CODE § 35-42-4-9 will be enacted on July 1, 2018.

[3] I.C. § 35-42-4-6. Effective July 1, 2014, a new version of this child solicitation statute was enacted, and Class D felony child solicitation is now a Level 5 felony. Because Moore committed these offense in 2012-2013, we will refer to the statute in effect at that time.

## Facts

[3] Moore is the stepfather of Z.J. ("Z.J."), who was born in 1999.[4] Moore and Z.J.'s mother ("Z.J.'s mother" or "her mother") married in 2006. Moore and Z.J.'s mother frequently used methamphetamine, requiring Z.J. to help take care of the house and her younger brother.

[4] Moore engaged in inappropriate sexual behavior and conversations with Z.J. from the time she was in fourth grade through the beginning of high school. For example, when Z.J. was in fourth grade and had not yet started her menstrual cycle, Moore gave Z.J. a box of tampons and tried to convince her to let him insert one into her. Also, when Z.J. was in fourth and fifth grade, Moore took her fishing multiple times, and he made her pull down her pants and show him her vaginal area every time she caught a fish. Moore called it their "father-daughter time[.]" (Tr. Vol. 3 at 51). Moore tried to convince Z.J. that what he had her do was "normal for fathers and daughters to do[,]" and he "would always tell [her] that it was beautiful, that it was special, [and] that no one could no [sic] about it." (Tr. Vol. 3 at 53). The fishing trips with Moore made Z.J. feel "very scared, manipulated, petrified, . . . hopeless, helpless, [and] just like [she] had no way out." (Tr. Vol. 3 at 52). Z.J. "beg[ged]" her mother to go fishing with them, and Z.J. eventually started to "throw a fit" so that she would not have to go fishing with Moore. (Tr. Vol. 3 at 52).

---

[4] In Moore's Appellant's Brief, his counsel alternatively refers to Z.J. as "Z.J." and "Z.G."

[5] Later, on one occasion during Z.J.'s seventh-grade school year, when no one was at the house, Moore took Z.J. into his bedroom, locked the door, and tried to convince her to engage in oral sex. She refused and tried to leave the bedroom. Moore eventually let her leave the room when she started to "struggle and yell and fight[.]" (Tr. Vol. 3 at 57).

[6] Moore frequently tried to persuade and "manipulate [Z.J.] into letting him touch [her]" by offering to buy her things such as a phone or concert tickets. (Tr. Vol. 3 at 58). Moore also manipulated Z.J. by going into her bedroom in the morning and telling her that he had done sexual things with her while she slept. For example, Moore told Z.J. that he had had sex with her during the night and had taken videos and photographs. Moore threatened to post them on the internet if Z.J. did not do something that he wanted her to do. Moore's claims made Z.J. feel "[d]isgusted, scared, terrified, [and] violated" and fearful that he would post photographs of her online. (Tr. Vol. 3 at 59).

[7] Frequently during Z.J.'s seventh grade year, Moore told Z.J. that he had given her a pregnancy test while she slept and tried to convince her that she was pregnant with his baby. Moore said that "the only way that [Z.J.] wouldn't get pregnant [wa]s if he fingered [her] and stirred up the sperm so that it wouldn't get [her] pregnant." (Tr. Vol. 3 at 60). One morning, as Moore drove Z.J. to school, he again told her that he had gotten her pregnant while she was sleeping, and he asked to insert his finger in her vagina to prevent the pregnancy. Moore told Z.J. that if she did not let him do that, then Z.J.'s mother would hate her and that he would "turn [Z.J.'s] whole family against

[her.]" (Tr. Vol. 3 at 60). Z.J. was "scared and confused" and felt that she "had no choice." (Tr. Vol. 3 at 59, 60). Moore pulled his truck over, told Z.J. to pull her pants down, and "fully penetrated [her] with his finger." (Tr. Vol. 3 at 60). He then took Z.J. to school, where she cried and bled throughout the day. Sometime thereafter, Z.J. went to a school counselor but did not divulge Moore's sexual abuse because Z.J. "was afraid that all of the threats that he had made would come true if [she] had told" the counselor. (Tr. Vol. 3 at 61).

[8] As Z.J. got older, there were multiple times when Z.J. was alone in Moore's car with him. Moore frequently tried to talk Z.J. into pulling down her pants and exposing her genital area to him. Z.J. refused. Moore also made comments about the shape of Z.J.'s buttocks and about how physically advanced she was for her young age.

[9] In December 2014, when fifteen-year-old Z.J. was sick with bronchitis and a fever, Moore went into her bedroom and gave her a "white trapezoid-shaped" pill that he told her was acetaminophen or ibuprofen. (Tr. Vol. 3 at 54). Z.J., who was familiar with these over-the-counter medicines, knew that the pill was not acetaminophen or ibuprofen. She put the pill in her sports bra and told Moore that she had taken it. Later that night while Z.J. was sleeping, Moore came back into her bedroom, reached underneath her blanket, and touched her thigh. Z.J. quickly rolled over and "asked him what the heck he was doing." (Tr. Vol. 3 at 54). Moore appeared surprised that Z.J. was awake, and he left her bedroom when Z.J.'s mother came into the room.

[10]     Once Z.J. started high school, she began to confide in some of her friends about what Moore had done to her. During the Summer of 2014, the summer before Z.J.'s ninth grade year, she told her friend, T.C. ("T.C."), that Moore "had molested [her] for a long time" and that she needed T.C.'s support. (Tr. Vol. 3 at 65). Z.J. also told T.C. about the incident in the truck when Moore touched Z.J. on the way to school. Subsequently, in June 2015, Z.J. also told her friend, N.B.C. ("N.B.C."), that Moore had inappropriately touched her. A few months later, Z.J. told two other friends, K. ("K.") and A. ("A."), about Moore's inappropriate touching.

[11]     In September 2015, when K. was at Z.J.'s house, Z.J.'s mother noticed that K. was avoiding looking at Moore. Z.J.'s mother thought it was "suspicious" and talked to K, who told Z.J.'s mother that she needed to talk to Z.J. Z.J.'s mother then talked to Z.J. privately and asked her what had happened. Z.J. told her mother that Moore "had touched [her] for a long time." (Tr. Vol. 3 at 71). Z.J. then told her mother about what he had done, including the fishing trips and the incident in the truck, and Z.J.'s mother cried. Z.J. and her mother later called the police. Before the police arrived, Z.J.'s mother told Moore that she knew what had happened, and she told him to leave the house and stay away from Z.J. Moore threatened to kill Z.J.'s mother and told her that he would not leave without his truck, her ring, and their loaded gun. He also threated to take Z.J. with him.

[12]     The State charged Moore with Count 1, Class A felony child molesting; Count 2, Level 5 felony attempted sexual misconduct with a minor; Count 3, Level 5

felony sexual misconduct with a minor; Count 4, Class D felony child solicitation; Count 5, Class D felony child solicitation; Count 6, Level 6 felony intimidation; and Count 7, Class B misdemeanor voyeurism.[5]

[13] On August 8-10, 2017, the trial court held a jury trial.  During the trial, Z.J., who was then seventeen years old, testified to the above facts.  Z.J. also testified that she had waited to tell her mother about Moore's actions because Moore "had told [her] many, many, many times he would either kill [her]. . . [or] run away with [her]" and that "he would turn her whole family against [her]" to the point where they would "hate" her and "disown" her.  (Tr. Vol. 3 at 124). Z.J.'s mother testified that she had noticed that, when Z.J. was in fourth grade, Z.J. had started to distance herself from Moore and had said that she hated him.  Z.J.'s mother confirmed Z.J.'s testimony that Moore was frequently alone with Z.J. and that he insisted on taking Z.J. to school.  Additionally, Z.J.'s mother testified that she had suspected that Moore may have done something inappropriate with Z.J. and that she had struggled with drug addiction and suffered from depression during the period that Moore had molested Z.J.  The State also presented testimony from Z.J.'s friends, T.C. and N.B.C., who both corroborated Z.J.'s testimony about when she disclosed Moore's abuse to them.

---

[5] These charges related to offenses that were alleged to have occurred between 2012 and 2015.

The jury found Moore guilty of Class A felony child molesting, Level 6 felony attempted sexual misconduct with a minor,[6] and the two counts of Class D felony child solicitation, and it found him not guilty of the remaining charges. The trial court imposed a thirty-five (35) year sentence for Moore's Class A felony child molesting conviction, a one (1) year sentence for his Level 6 felony attempted sexual misconduct with a minor conviction, and an eighteen (18) month sentence for each of his Class D felony child solicitation convictions. The trial court ordered these sentences to be served concurrently. Moore now appeals.

## Decision

Moore argues that there was insufficient evidence to support his convictions for Class A felony child molesting, Level 6 felony attempted sexual misconduct with a minor, and the two counts of Class D felony child solicitation.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the [jury's verdict]. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a

---

[6] The State charged Moore with attempted sexual misconduct with a minor as a Level 5 felony, but the jury found him guilty of the charge as a Level 6 felony.

reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original).

[16]    To convict Moore of Class A felony child molesting as charged in Count 1, the State was required to prove beyond a reasonable doubt that Moore, who was at least twenty-one (21) years of age, knowingly or intentionally performed or submitted to deviate sexual conduct with Z.J., a child under fourteen (14) years of age. *See* I.C. § 35-42-4-3(a)(1).[7] This charge related to Moore's act of digitally penetrating Z.J.'s vagina. Next, to convict Moore of Level 6 felony attempted sexual misconduct with a minor as charged in Count 2, the State was required to prove beyond a reasonable doubt that Moore knowingly attempted to perform or submit to fondling or touching of Z.J., a child at least fourteen (14) years of age but less than sixteen (16) years of age, with intent to arouse or satisfy the sexual desires of either Z.J. or Moore and that he took a substantial step toward the commission of the crime by entering Z.J.'s bedroom and reaching under her blankets. *See* I.C. §§ 35-42-4-9(b); 35-41-5-1(a). Lastly, to

---

[7] At the time of Moore's offense, deviate sexual conduct was defined as "an act involving: (1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." I.C. § 35-31.5-2-94 (2013). In 2014, the term "deviate sexual conduct" was removed from the child molesting statute and replaced with the term "other sexual conduct[,]" which is defined in INDIANA CODE § 35-31.5-2-221.5 and has an identical definition as deviate sexual conduct.

convict Moore of the two counts of Class D felony child solicitation as charged in Counts 4 and 5, the State was required to prove beyond a reasonable doubt that Moore, who was at least eighteen (18) years of age, knowingly solicited Z.J., a child under the age of fourteen (14), to engage in deviate sexual conduct. *See* I.C. § 35-42-4-6(b).[8]  Count 4 related to Moore's act of asking Z.J. to let him insert his finger into her vagina to prevent a pregnancy, and Count 5 related to his solicitation of oral sex when he locked her in his bedroom.

[17]  Moore does not dispute that the State presented evidence, through Z.J.'s testimony, that supported the elements of his offenses.  Instead, he contends that there was insufficient evidence to support his convictions because Z.J.'s testimony incredibly dubious.

[18]  Under the incredible dubiosity rule, appellate courts may impinge upon a trier of fact's function to judge the credibility of a witness when confronted with "inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002).  The incredible dubiosity rule is limited to cases where the following is present:  "The evidence supporting the conviction must have been offered by a sole witness; the witness's testimony must have been coerced, equivocal, and wholly uncorroborated; it must have been 'inherently improbable' or of dubious credibility; and there must have been no circumstantial evidence of the

---

[8] Like the 2014 amendment to the child molesting statute, the term "deviate sexual conduct" was removed from the child solicitation statute and replaced with the term "other sexual conduct[.]"

defendant's guilt." *McCallister v. State*, 91 N.E.3d 554, 559 (Ind. 2018) (citing *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015)). *See also Whedon v. State*, 765 N.E.2d 1276, 1278 (Ind. 2002) (explaining that the incredible dubiosity rule applies only "where a sole witness presents inherently contradictory testimony that is equivocal or coerced and there is a lack of circumstantial evidence of guilt"). "Application of this rule is rare[,]" *Love*, 761 N.E.2d at 810, and "is limited to cases with very specific circumstances because we are extremely hesitant to invade the province of the jury." *Smith v. State*, 34 N.E.3d 1211, 1221 (Ind. 2015).

[19] In support of Moore's argument that Z.J.'s testimony was incredibly dubious, he argues that Z.J.'s trial testimony was "inherently improbable" because she delayed in informing her mother about the allegations against Moore. (Moore's Br. 10). He also contends that Z.J.'s testimony was incredibly dubious because she was the only witness to testify about Moore's actions and there was "no physical evidence to corroborate her testimony." (Moore's Br. 10). Moore states that "the entire case boiled down to Z.J.'s credibility." (Moore's Br. 10).

[20] Here, however, the incredible dubiosity rule is not applicable. Z.J.'s trial testimony was not equivocal or inherently improbable. The fact that Z.J. did not immediately divulge Moore's offenses against her did not render her testimony inherently improbable. *See Feyka v. State*, 972 N.E.2d 387, 393 (Ind. Ct. App. 2012) (explaining that the fact that the victim did not immediately report the defendant's offenses was "insignificant" and did not support the defendant's incredible dubiosity argument), *trans. denied*. Furthermore, the fact

that there was no physical evidence to corroborate Z.J.'s testimony regarding Moore's actions against her does not render her testimony incredibly dubious. *Cardwell v. State*, 516 N.E.2d 1083, 1087 (Ind. Ct. App. 1987) (explaining that the "lack of corroborating medical or physical evidence . . . does not, of itself, render the uncorroborated testimony of the victims insufficient to sustain a child molesting conviction"), *reh'g denied*, *trans. denied*. Indeed, "[a] conviction can be sustained on only the uncorroborated testimony of a single witness, even when that witness is the victim." *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). *See also Hoglund v. State*, 962 N.E.2d 1230, 1238 (Ind. 2012) ("The testimony of a sole child witness is sufficient to sustain a conviction for molestation."), *reh'g denied*. Additionally, Z.J.'s mother provided testimony that corroborated Z.J.'s behavior and revealed that her mother had thought that Moore had done something inappropriate to Z.J.

[21] Moore's argument is nothing more than an invitation for this Court to reweigh the evidence and judge the credibility of the witness, which we decline to do. *See Drane*, 867 N.E.2d at 146. The jury heard and believed Z.J.'s testimony, which was sufficient to support the guilty verdicts for Counts 1, 2, 4, and 5, and we decline to impinge on the jury's credibility determinations. *See Ferrell v. State*, 746 N.E.2d 48, 51 (Ind. 2001) ("If the testimony believed by the trier of fact is enough to support the verdict, then the reviewing court will not disturb it."). Because Moore has failed to show that Z.J.'s testimony was so inherently improbable that no reasonable trier of fact could believe it and because there is probative evidence from which the jury could have found Moore guilty beyond

a reasonable doubt, we affirm his convictions. *See, e.g.*, *Hampton v. State*, 921 N.E.2d 27, 29 (Ind. Ct. App. 2010) (holding that the testimony of the victim was not incredibly dubious and affirming the defendant's child molesting conviction), *reh'g denied*, *trans. denied*.

Affirmed.

Vaidik, C.J., and Barnes, J., concur.